### 29445. DORAN v. HOME MART BUILDING CENTERS, INC.

UNDERCOFLER, Presiding Justice.

On November 6, 1973, W. M. Griffith as agent of Home Mart Building Centers, Inc., made an affidavit before a judge of the DeKalb Superior Court to secure the issuance of an attachment against the real and personal property of the appellant in accordance with the provisions of Code § 8-109 (as amended, Ga. L. 1968, p. 1013). The attachment affidavit alleged that appellant was indebted to Home Mart Building Centers, Inc., in the sum of $108,385.43 together with interest and costs of

collection, and that he is actually removing himself without the limits of DeKalb County and absconding and concealing himself for the purpose of avoiding payment of the indebtedness. An attachment bond was given in the amount of $250,000. The writ of attachment duly issued and certain personal property of the appellant was seized. An order was entered directing Doran to show cause on December 14, 1973, why final judgment should not be granted. Doran traversed the grounds of the attachment and moved to dismiss the attachment on the ground that Code § 8-602 only provides for notice subsequent to the issuance of an attachment and without affording an opportunity to be heard before property is seized. He contends that this denies him due process, equal protection and his rights to the courts under the State and Federal Constitutions. Code Ann. §§ 2-102, 2-103, 2-104 and Code § 1-815.

In *Kitson v. Hawke,* 231 Ga. 157, 161 (200 SE2d 703) this court in upholding the attachment statute as constitutional relied on the decision of the United States Supreme Court in Ownbey v. Morgan, 256 U. S. 94, 111 (41 SC 433, 65 LE 837, 17 ALR 873) wherein the Delaware attachment statutes were upheld as constitutional. That court stated that "a property owner who absents himself from the territorial jurisdiction of a state, leaving his property within it, must be deemed ex necessitate to consent that the state may subject such property to judicial process to answer demands made against him in his absence, according to any practicable method that reasonably may be adopted. A procedure customarily employed, long before the Revolution, in the commercial metropolis of England, and generally adopted by the states as suited to their circumstances and needs, cannot be deemed inconsistent with due process of law . . ."

In the *Kitson* case this court further said: "Moreover, the recent cases of Sniadach v. Family Finance Corporation, 395 U. S. 337 [89 SC 1820, 23 LE2d 349] and Fuentes v. Shevin, 407 U. S. 67 [92 SC 1983, 32 LE2d 556] do not stand for the proposition that *every* summary proceeding is a denial of due process, as contended by the appellant. Indeed, the Ownbey case is cited in Sniadach as authority for the statement that 'summary procedure

may well meet the requirements of due process in extraordinary situations.' 395 U. S. 337, 339. In Fuentes, the court stated that these situations, however, must be truly unusual, such as when 'there has been a special need for very prompt action.' Justice Stewart noted that the Ownbey case 'involved attachment necessary to secure jurisdiction in a state court — clearly a most basic and important public interest.' 407 U. S. 67, 91 (Fn. 23)."

Code § 8-101 provides that "Attachments may issue in the following cases: 1. When the debtor resides out of the state. 2. When the debtor is actually removing, or about to remove, without the limits of the county. 3. When the debtor absconds. 4. When the debtor conceals himself. 5. When the debtor resists legal arrest. 6. When the debtor is causing his property to be removed beyond the limits of the state."

In North Georgia Finishing, Inc. v. Di-Chem, Inc., — U. S. — (95 SC 719, 42 LE2d 751), decided January 22, 1975, the United States Supreme Court held the Georgia garnishment statute unconstitutional. The basis of the decision was that the garnishment was issuable on the affidavit of the creditor or his attorney, and "the latter need not have personal knowledge of the facts. § 46-103. The affidavit, like the one filed in this case, need contain only conclusory allegations. The writ is issuable, as this one was, by the court clerk, without participation by a judge. Upon service of the writ, the debtor is deprived of the use of the property in the hands of the garnishee . . ." and because there was no provision for an early hearing of the matter.

The only part of the attachment statute under attack here is Code § 8-602 which provides: "The plaintiff, his agent, or attorney at law may give notice in writing to the defendant of the pendency of such attachment and of the proceedings thereon, which shall be served personally on the defendant by the sheriff, his deputy, or a constable of the county to which said attachment is returnable, by giving him a copy of said notice at least 10 days before final judgment on said attachment, and returning said original notice with his service entered thereon to the court in which said attachment is pending . . ."

In the instant case the attachment affidavit was

made before a judge of the superior court asserting that Doran is actually removing without the limits of DeKalb County; that Doran absconds; that Doran conceals himself; that he is actually removing, absconds and conceals himself for the purpose of avoiding payment of the aforesaid indebtedness and that the deponent has personal knowledge of the facts and knows them to be true.

We hold that the facts in this case meet the "unusual conditions" or "extraordinary situations" tests of the Supreme Court and that Code § 8-602 is not unconstitutional for any reason asserted. Compare Mitchell v. W. T. Grant Co., 416 U. S. 600 (94 SC 1895, 40 LE2d 406) (1974).

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 22, 1975 — DECIDED FEBRUARY 4, 1975 — REHEARING DENIED FEBRUARY 18, 1975.

*Charles R. Smith, H. A. Stephens, Jr.,* for appellant. *Gambrell, Russell, Killorin, Wade & Forbes, Jack O. Morse, Paul D. Hill,* for appellee.

GUNTER, Justice, concurring.

It is with great uncertainty that I concur in the judgment of the court in this case, for I perceive that we are again in the Sniadach, Fuentes, W. T. Grant, and North Georgia Finishing thicket.

I concede that the Georgia attachment statutes do not provide for notice and a hearing *prior to* "seizure," "deprivation," "sequestration," or "impoundment." Georgia's prejudgment garnishment statute (not applicable to wages) did not provide for notice and a hearing "prior to impoundment," and it was declared unconstitutional by a vote of 6-3 by the Supreme Court of the United States. North Georgia Finishing, Inc. v. Di-Chem, Inc., decided January 22, 1975. My reading of the opinions in that case indicates to me that four members of the Supreme Court stand rigidly on the proposition that a hearing must be held *prior* to the deprivation of the property right. Five members of the

Supreme Court of the United States seem to me to hold that such a prior hearing is not necessary in some cases provided a reasonably timely hearing is conducted *after* the deprivation.

Sniadach and Fuentes said plainly to me that a seizure of property, effected by or with the aid of the state, without a hearing prior to the seizure did not comport with constitutional due process requirements.

However, when this court decided *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* I did not believe that a "prior hearing" was absolutely necessary in all circumstances, because to give prior notice and a prior hearing in a garnishment action where the debtor was a corporation merely permitted the debtor to check the funds out of the bank account sought to be impounded. A requirement of prior notice and a prior hearing in such a situation rendered garnishment, for all practical purposes, totally worthless.

Fuentes said: "But it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment. Sniadach v. Family Finance Corp., 395 U. S. 337; Bell v. Burson, 402 U. S. 535. Both Sniadach and Bell involved takings of property pending a final judgment in an underlying dispute. In both cases, the challenged statutes included recovery provisions, allowing the defendants to post security to quickly regain the property taken from them. Yet the court firmly held that these were deprivations of property that had to be preceded by a fair hearing." P. 84. Again: "This reading of Sniadach and Goldberg reflects the premise that those cases marked a radical departure from established principles of procedural due process. They did not. Both decisions were in the mainstream of past cases; having little or nothing to do with the absolute 'necessities' of life but establishing that due process requires an opportunity for a hearing before a deprivation of the property takes effect." P. 88. Again: "We hold that the Florida and Pennsylvania prejudgment replevin provisions work a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor." P. 96.

Then came Mitchell v. W. T. Grant Co., and, to me, it clearly held that a post-sequestration hearing did comport with due process. The majority opinion stated: "Petitioner asserts that his right to a hearing before his possession is in any way disturbed is nonetheless mandated by a long line of cases in this court, culminating in Sniadach v. Family Finance Corp., 395 U. S. 337 [89 SC 1820, 23 LE2d 349] (1969), and Fuentes v. Shevin, 407 U. S. 67 [92 SC 1983, 32 LE2d 556] (1972). The pre-Sniadach cases are said by petitioner to hold that 'the opportunity to be heard must precede any actual deprivation of private property.' Their import, however, is not so clear as petitioner would have it: they merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pre-termination hearing where a full and immediate post-termination hearing is provided. The usual rule has been '[w]here only property rights are involved, postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate."

In his concurring opinion in W. T. Grant, Mr. Justice Powell said that the court had withdrawn significantly from the principle that due process requires an adversary hearing prior to the deprivation. The four dissenters, as I read what they said, stuck by the "prior hearing" requirement of Fuentes.

North Georgia Finishing indicates to me that there can be a post-seizure hearing that will comport with due process even though the statute in that case did not so specifically provide. I had always thought, and perhaps this was my shortcoming, that a debtor could always intervene in a garnishment action and move for a dissolution hearing to submit evidence to show that the garnishment was legally insufficient. See Code Ann. §§ 81A-181, 81A-124 (a).

In any event, I still do not know whether a pre-seizure hearing is required, or if a post-seizure hearing, reasonably held in a timely manner, will pass muster.

In the light of Sniadach, Fuentes, W. T. Grant, and North Georgia Finishing this member of the Supreme

Court of Georgia still "acts largely in the dark." *Fuentes v. Shevin*, 407 U. S. p. 93.

Mr. Justice Powell in *W. T. Grant* and *North Georgia Finishing* has reported the demise of the "pre-seizure hearing requirement in all circumstances" principle so clearly enunciated in *Fuentes*, but Mr. Justice Stewart has said, in Mark Twain fashion, that the report of the demise of this principle is greatly exaggerated. See the concurring opinion of Mr. Justice Stewart in *North Georgia Finishing, Inc. v. Di-Chem, Inc.*

Since there was a post-seizure hearing in this case, held in a timely and reasonable manner, I conclude that the appellant was not deprived of due process of law. I concur in the judgment of affirmance.

ON MOTION FOR REHEARING.

GUNTER, Justice.

Appellant's motion for rehearing asserts that the opinion of the court has misapplied *W. T. Grant* and *North Georgia Finishing*, two decisions rendered by the Supreme Court of the United States. I concede that those two decisions have been misapplied if they stand for pre-seizure notice and a hearing "in all circumstances," except where the moving party holds a property interest in the property seized. In the instant case the appellee owned no interest in the attached property at the time of the seizure.

I do not read those two decisions in that manner. The issue for me is whether post-seizure notice and an opportunity for a hearing are afforded in a timely and reasonable manner. And I conclude that Georgia's statutory attachment scheme does provide for such notice and such a hearing.

The motion for rehearing also maintains that the only provision in the Georgia attachment statutory scheme for the debtor to secure possession of the property seized is contained in Code § 8-701 which provides that the defendant can post bond and secure the return of the attached property.

This contention has no merit at all. Code § 8-403 provides that an attachment is subject to the laws as to replevy, traverse, demurrer, and other modes of defense.

Code § 8-405 provides that a party whose property has been attached without a hearing may apply to the superior court judge who issued the attachment, "stating fully and distinctly the grounds of his defense, showing why such attachments should not have been issued, or should be removed." Code Ann. § 8-601 and § 8-117 provide that a party at whose instance an attachment is levied must file a declaration in attachment within fifteen days after the levy, and all subsequent proceedings are governed by the same rules of procedure and practice applicable in all civil actions.

In the case at bar the writ of attachment was issued by a judge of superior court on November 6; the attachment was levied on November 7; the declaration in attachment was filed on November 13; on November 13, the judge of the superior court entered an order directing the defendant in attachment to appear and plead on December 14; and the defendant in attachment on December 13 filed responsive pleadings which were later amended to attack the constitutionality of the Georgia attachment scheme for failure to provide procedural due process of law.

Because of the foregoing statutory provisions and the procedures followed in this case, it is my view that Georgia's statutory attachment scheme adequately provides for a post-seizure hearing. And if a post-seizure hearing will pass constitutional muster, as I think it should, Georgia's attachment statutes are not facially unconstitutional.

I concur in the court's denial of the appellant's motion for rehearing.