581 F.2d 526
 Donna M. JOHNSON, on behalf of herself and all others
similarly situated, Plaintiff-Appellant,
v.
AMERICAN CREDIT COMPANY OF GEORGIA, Jeff F. Dickey, Clerk of
the State Court of Chatham County, Georgia, and his Agents,
Deputies and Assigns, in their official capacities, Walter
Mitchell, Jr., Sheriff of the State Court of Chatham County,
Georgia, and his Agents, Deputies and Assigns, in their
official capacities, Defendants-Appellees.
 No. 76-2869.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 6, 1978.
 
 Steven Gottlieb, Savannah, Ga., Charles U. Baird, Georgia Legal Services Program, Atlanta, Ga., for plaintiff-appellant.
 John W. Hendrix, Savannah, Ga., for American Credit Co. of Ga.
 Anton F. Solms, Jr., Savannah, Ga., Gordon B. Smith, Savannah, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before WISDOM, TJOFLAT and VANCE, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 Donna M. Johnson appeals from a district court order dismissing her action without prejudice. We reverse the district court, reach the merits of her claim, and find that the Georgia prejudgment attachment scheme does not comport with the procedural due process requirements of the Fourteenth Amendment of the United States Constitution.
 
 I.
 
 2
 In April 1973, American Finance Company financed Johnson's purchase of an automobile. In this transaction the finance company received a security interest in the automobile. A dispute arose between Johnson and the finance company over automobile insurance, and as a result she stopped making payments. On July 19, 1974, the finance company obtained a writ of attachment from the state court of Chatham County, Georgia. Issuance of the writ was based on an affidavit filed by the finance company in which it asserted that Johnson was about to remove her automobile from the state. Acting on this writ, Sheriff Walter Mitchell, a defendant, or one of his deputies attached and seized the automobile. Under Georgia law, by posting a bond the debtor may replevy property attached prior to judgment.[1] Johnson posted no bond, however. The automobile was returned to her on August 10, 1974, when a state court found that the attachment had lapsed because the finance company had failed to file a "declaration of attachment" a complaint on the underlying claim within fifteen days after the levy of the attachment.[2] At no time between July 19 and August 10 was Johnson provided with the opportunity to present any defenses to her alleged failure to make payments on the financing contract.
 
 
 3
 On August 2, 1974, Johnson filed this action under 42 U.S.C. § 1983 on behalf of herself and all others similarly situated. She alleges that the Georgia prejudgment attachment scheme violates the due process clause of the Fourteenth Amendment. She seeks damages for the alleged unconstitutional deprivation of her automobile. In addition, on behalf of the class she seeks a declaratory judgment that the Georgia prejudgment attachment process is unconstitutional.
 
 
 4
 On the day the suit was filed, the trial court ordered that the action could proceed provisionally as a class action. Then, on January 31, 1975, Johnson filed a motion for a summary judgment that the Georgia prejudgment attachment scheme is unconstitutional. The trial court, on February 18, 1975, entered an order abstaining from ruling on the constitutional issue and revoking class action certification.[3] Finally, on June 24, 1976, the trial court dismissed Johnson's complaint on the ground that she could pursue state judicial remedies. In its order of dismissal, the trial court explained its February 18, 1975 order as "abstain(ing) from a decision on the constitutional question on the theory that Mrs. Johnson had a right to sue in the Georgia courts on the (finance company's) attachment bond and raise that issue therein".[4]
 
 II.
 
 5
 The trial court erred when it abstained from ruling on Johnson's motion for partial summary judgment and when it later dismissed her complaint because she supposedly had an adequate remedy at state law. She cannot be denied a federal forum to pursue her § 1983 claim on the ground that an adequate state remedy is available to her. The Supreme Court has squarely held that a plaintiff who brings a § 1983 action need not exhaust state judicial remedies. E. g., Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; McNeese v. Board of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622. "In a like manner, this Court routinely rejects the cry that it is necessary to exhaust state remedies." Hall v. Garson, 5 Cir. 1970, 430 F.2d 430, 436.
 
 
 6
 The defendants contend that the trial court's actions in declining to rule on the appellant's summary judgment motion and in later dismissing the complaint can be justified by the doctrine of abstention applied in Railroad Commission v. Pullman Company, 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. We find that case inapposite. In Pullman the Supreme Court held that when a case involves an unsettled question of state law that, if resolved, might make it unnecessary to decide a federal constitutional question, a federal court should stay its hand until a state court has addressed the state questions.[5] Pullman, then, does not justify abstention when the state law is unambiguous. Wisconsin v. Constantineau, 1971, 400 U.S. 433, 438-39, 91 S.Ct. 507, 27 L.Ed.2d 515. Nor does Pullman call for abstention when the state courts have authoritatively construed the state law. Kusper v. Pontikes, 1973, 414 U.S. 51, 55-56, 94 S.Ct. 303, 38 L.Ed.2d 260. The alleged constitutional defects are apparent on the face of the Georgia statutory provisions challenged by the appellant. Furthermore, the Supreme Court of Georgia has held that these statutes are constitutional. Doran v. Home Mart Building Centers, Inc., 1975, 233 Ga. 705, 213 S.E.2d 825; Kitson v. Hawke, 1973, 231 Ga. 157, 200 S.E.2d 703.[6] Indeed, the Supreme Court of Georgia no longer entertains constitutional challenges to the attachment scheme.[7] Under existing law, the trial court had the duty to exercise jurisdiction over Johnson's claims.[8]
 
 
 7
 The defendants now suggest yet another theory, not presented to the trial court, to justify avoiding a determination of the merits of Johnson's claims. The defendants argue that, because the automobile has been returned to Johnson, her personal claim is moot. This contention is incorrect. Her claim is for damages for the period in which she was unconstitutionally deprived of her automobile. The return of the automobile, then, simply signals the end of the period of deprivation. It does not destroy her cause of action for that period. E. g., Jones v. Diamond, 5 Cir. 1975, 519 F.2d 1090, 1093 n.1; Cruz v. Estelle, 5 Cir. 1974, 497 F.2d 496, 499.
 
 III.
 
 8
 Johnson had sought class action certification under F.R.Civ.P. 23(b)(2). To qualify under that provision, the action must satisfy all the requirements of both rule 23(a) and rule 23(b)(2). Those portions of rule 23 provide as follows:
 
 
 9
 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 
 
 10
 (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.
 
 
 11
 In its order revoking class action certification, the trial court stated that Johnson was not an appropriate representative of the class because "all the members of the class . . . do not have common constitutional questions".[9] To determine the propriety of the trial court's order, then, it is necessary to examine the Georgia attachment scheme and the constitutional challenges to it asserted by Johnson on behalf of the suggested class, which Johnson would define as all persons who have had or will have property attached prior to judgment under authority of these Georgia statutes.
 
 
 12
 In brief, prejudgment attachment is available in Georgia in six circumstances:
 
 
 13
 1. When the debtor resides out of the State;
 
 
 14
 2. When the debtor is actually removing, or about to remove, without the limits of the county;
 
 
 15
 3. When the debtor absconds;
 
 
 16
 4. When the debtor conceals himself;
 
 
 17
 5. When the debtor resists legal arrest;
 
 
 18
 6. When the debtor is causing his property to be removed beyond the limits of the State.
 
 
 19
 Ga.Code § 8-101. The party seeking the writ of attachment (the plaintiff) must "make an affidavit before some judge of the superior court, judge of the county court, judge of the city court, magistrate, justice of the peace, or clerk of any court of record" that states the amount claimed to be owed and that the debtor satisfies one of the six provisions of Ga.Code § 8-101. Ga.Code § 8-109. The plaintiff must also provide a bond in favor of the defendant in attachment. Ga.Code § 8-111. When an officer specified in Ga.Code § 8-109 is presented with the affidavit and bond, "it shall be (his) duty . . . to issue an attachment against the defendant". Ga.Code § 8-114. No hearing is required prior to issuance of the attachment. An attachment issued on a claim that is not the subject of a pending lawsuit will lapse unless the plaintiff files a "declaration in attachment", which operates as a complaint on the claim, within fifteen days of the date of issuance. Ga.Code § 8-117.
 
 
 20
 Johnson asserts four constitutional challenges to this scheme. First, she argues that it violates due process because no judicial official with discretion to refuse to allow the attachment is required to determine whether the affidavit of the plaintiff justifies prejudgment attachment. Second, she finds the scheme unconstitutional because it allegedly does not require a prompt post-seizure hearing. Third, she contends that, because the six circumstances set forth in Ga.Code § 8-101 do not qualify as "extraordinary situations" of the type envisioned in Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, due process requires a hearing prior to attachment. Finally, she insists that the scheme violates due process because it can result in the sale of the seized property without any notice or hearing.[10]
 
 
 21
 As discussed in Part IV, this Court has determined that it need reach only the first argument raised by Johnson. That attachments are issued without judicial scrutiny affects equally all members of the suggested class that is, all persons who have had or will have property attached prior to judgment under the Georgia scheme. This Court, then, could hold that the trial court should have certified this broad class for Johnson's first argument and then disposed of the case, as we do in Part IV, by finding the statutory scheme unconstitutional on that basis. See Hammond v. Powell, 4 Cir. 1972, 462 F.2d 1053. In a class action, however, the trial court may not allow its view of the merits to determine the outcome of the class certification issue. See Eisen v. Carlisle & Jacquelin, 1974, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (quoting Miller v. Mackey International, 5 Cir. 1971, 452 F.2d 424, 427). It was proper, then, for the trial court to consider the propriety of a class action on each of Johnson's four constitutional arguments.
 
 
 22
 We agree with Johnson that rule 23(a)(2)'s "commonality" provision does not require complete identity of legal claims. See, e. g., 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1763 (1972). Rule 23(b)(2), though, has an independent requirement of commonality it allows a class action when "the party opposing the class has acted or refused to act on grounds Generally applicable to the class".[11] Professors Wright and Miller state that a rule 23(b)(2) class action is appropriate when "the party opposing the class . . . has established a regulatory scheme Common to all class members . . . . What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the Entire class."[12]
 
 
 23
 Johnson seeks to bring a class action on behalf of all persons who have had or will have property attached prior to judgment under the Georgia statutory scheme. Under rule 23(b)(2), she may bring such a class action for only her first argument (that the statutory scheme is unconstitutional because attachments issue without prior judicial scrutiny) and her second argument (that the scheme is unconstitutional because no prompt post-seizure hearing is provided). The circumstances of the class members raise identical issues under these two arguments. In contrast, rule 23(b)(2) will not allow an action for this broadly defined class premised on her third argument that a prior hearing is required because the six situations in which attachment is allowed are not "extraordinary situations" under Fuentes. This argument obviously raises six discrete issues not common to the members of the broadly defined class. For her third argument, then, a subclass must be carved out of the class.
 
 
 24
 F.R.Civ.P. 23(c)(4)(B) provides that "(w)hen appropriate . . . a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly". A subclass, then, must independently meet all of rule 23's requirements for maintenance of a class action. See 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1790, at 191-92 (1972). A fundamental requirement is that the representative plaintiff must be a member of the class she wishes to represent. See East Texas Motor Freight System, Inc. v. Rodriguez, 1977, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453; 7 C. Wright & A. Miller, § 1761. For her third constitutional challenge, then, Johnson may represent only a subclass consisting of all persons who, like her, have had or will have property attached prior to judgment because they allegedly were removing the property from the state. No challenge may be raised in this action to the other five situations that give rise to attachment under the Georgia statutes, because there are no representative plaintiffs present who have been aggrieved by them and thus who can represent the appropriate subclasses.[13]
 
 
 25
 We need comment only briefly on Johnson's fourth argument that the statutory scheme can result in sale of the attached property without notice and hearing. For this argument, the class would have to be confined to only persons who have been or will be deprived of property in this manner. Because Johnson has never suffered this fate, she cannot serve as the representative plaintiff for a class action premised on this argument.
 
 
 26
 In summary, we hold that the trial court abused its discretion when it revoked class action certification. This action may proceed as a class action premised on the first three constitutional challenges presented by Johnson. For her first two challenges, the class is defined as all persons who have had or will have property attached prior to judgment under the Georgia attachment scheme. A class action based on her third challenge is proper only for a subclass consisting of all persons who have had or will have property attached prior to judgment under the Georgia attachment scheme because they allegedly were or will be removing the property from the state. A class action cannot be premised upon Johnson's fourth argument.
 
 IV.
 
 27
 We held in Part II that the trial court erred when it refused to rule on Johnson's motion for partial summary judgment on the constitutional issue. Her facial challenges to the Georgia statutory scheme, of course, raise no triable issues of fact. Rather than prolong this case on these issues by remanding, then, we will address her arguments of facial unconstitutionality.
 
 
 28
 Due process challenges to the facial constitutionality of creditors' provisional remedy statutes must be analyzed in light of four Supreme Court decisions: Sniadach v. Family Finance Corp., 1969, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349; Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; Mitchell v. W. T. Grant Co., 1974, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406; North Georgia Finishing, Inc. v. Di-Chem, Inc., 1975, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751. The courts and commentators have struggled mightily to harmonize this line of decisions.[14] In this case, because we hold that the Georgia scheme violates a clear requirement of these cases, we see no purpose in making a lengthy statement encompassing our views on the many nuances that arise out of Sniadach and its progeny.
 
 
 29
 As discussed earlier, under the Georgia scheme the creditor may apply for attachment "before some judge of the superior court, judge of the county court, judge of the city court, magistrate, justice of the peace, or clerk of any court of record". Ga.Code § 8-109. When presented with a creditor's affidavit and bond, any of these officials has "the Duty . . . to issue an attachment against the defendant". Ga.Code § 8-114 (emphasis added). We agree with Johnson that this procedure is a facial violation of due process of law.
 
 
 30
 In Sniadach, the Supreme Court invalidated the Wisconsin prejudgment garnishment procedure because notice and the opportunity to be heard were not required before the seizure of wages. Then, in Fuentes, a 4-3 decision,[15] the Court struck down the prejudgment replevin laws of Florida and Pennsylvania because they denied "the right to a prior opportunity to be heard before chattels are taken from their possessor". 407 U.S. at 96, 92 S.Ct. at 2002. In Mitchell, however, the Supreme Court held that the Louisiana sequestration statute comported with due process even though it provided no pre-seizure notice and opportunity to be heard. The Court explained that the Louisiana procedure "effects a constitutional accommodation of the conflicting interests of the parties" because, among other things, the creditor was required to obtain prior judicial authorization for the attachment. 416 U.S. at 606, 617 & n.12, 94 S.Ct. at 1900. Finally, in Di-Chem the Court struck down the Georgia garnishment scheme because, unless the debtor posted a counterbond, it placed the garnished property "totally beyond use during the pendency of the litigation on the alleged debt, all by a writ of garnishment issued by a court clerk . . . without participation by a judicial officer". 419 U.S. at 606, 95 S.Ct. at 722. The Court stressed that the Georgia scheme was unlike the Louisiana procedure upheld in Mitchell, which allowed issuance of a writ of sequestration "only by a judge upon the filing of an affidavit going beyond mere conclusory allegations and clearly setting forth the facts entitling the creditor to sequestration". 419 U.S. at 607, 95 S.Ct. at 722.
 
 
 31
 It seems clear, then, that due process requires that a prejudgment seizure be authorized by a judge who has discretion to deny issuance of the appropriate writ.[16] Because the Georgia prejudgment attachment scheme does not provide this procedural guarantee, we hold that it is facially unconstitutional. By so holding, we need not address Johnson's other facial attacks on the constitutionality of the attachment procedure.
 
 
 32
 Johnson must be accorded a trial on the issue of damages. In addition, under our resolution of the class action issue, the declaratory judgment sought by Johnson shall be issued in favor of the class of all persons who have had or will have property seized under the Georgia prejudgment attachment scheme. The cause is REVERSED AND REMANDED to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Ga.Code § 8-701
 
 
 [2]
 See Ga.Code §§ 8-117, 8-601
 
 
 [3]
 Johnson immediately appealed this ruling. This Court held that the ruling was not appealable. Johnson v. American Credit Co., 5 Cir. 1975; See 517 F.2d 478 (table). The Supreme Court denied certiorari. 424 U.S. 971, 96 S.Ct. 1472, 47 L.Ed.2d 740 (1976)
 
 
 [4]
 In the February 18, 1975 order, the trial court stated that its abstention ruling was "without prejudice to Mrs. Johnson's right to pursue her remedies in the courts of Georgia. That is where she belongs." The trial court quoted this language in its order of dismissal dated June 24, 1976, which is more clearly couched in an exhaustion-of-state-remedies theory than is the February 18, 1975 order
 
 
 [5]
 See generally Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071 (1974); 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction §§ 4241-43 (1978). In Carey v. Sugar, 1976, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (per curiam), the Supreme Court applied Pullman in holding that the three-judge district court should have abstained from ruling on the constitutionality of New York's attachment scheme. The Court determined that, if accorded the opportunity, the New York courts might give the challenged statutes a constitutional construction
 
 
 [6]
 In its order abstaining from addressing Johnson's motion for partial summary judgment, the trial court asserted that the challenged statutes might not be unconstitutional on their face because a Georgia state judge from whom a writ of attachment is sought might invoke the inherent powers of his court to engraft all the requisite due process safeguards upon the Georgia attachment scheme. Even assuming the existence of such inherent judicial power, this approach to abstention is inappropriate. First, it did not take into account that a clerk of the court may issue writs of attachment under Georgia law. Second, it would require abstention in every case in which a state statute is facially challenged on federal constitutional grounds, even when, as here, the statute is unambiguous and has been recently upheld by the highest state court. As a general principle, then, this approach would drive all such cases out of the federal forum. That is clearly an improper result, since in such cases "it is the Duty of the federal court to exercise its properly invoked jurisdiction" except when the challenged state law is unclear. Harman v. Forssenius, 1965, 380 U.S. 528, 534-35, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (emphasis added)
 
 
 [7]
 See Image Mills, Inc. v. Vora, 1978, Ga.App., 245 S.E.2d 882, a constitutional challenge to these statutory provisions, which the Supreme Court of Georgia transferred to the Georgia Court of Appeals, apparently because the high court considered this a settled constitutional question over which it will no longer entertain jurisdiction. This case was decided after the district court entered its order of dismissal
 
 
 [8]
 The defendants do not assert that the abstention by the district court can be justified under the principles of federalism and comity developed in Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and extended in Trainor v. Hernandez, 1977, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486. Younger and Trainor do not apply to this case
 
 
 [9]
 The trial court appeared to have no other objection to the class action. We find that Johnson's action qualifies for class action status under F.R.Civ.P. 23 when the class is defined as we have in the following portion of this Part of our opinion. The defendants argue that the class is unmanageable because it is too large and too diversified. This argument would be relevant only if Johnson had sought class certification under Rule 23(b)(3). See F.R.Civ.P. 23(b)(3)(D)
 
 
 [10]
 She argues that sale without notice or hearing could occur in two ways. First, she asserts that, under Ga.Code § 8-601, failure to serve the declaration upon the defendant does not invalidate the attachment. A defendant who was never served presumably would not answer the declaration, of course, and would incur a default judgment. Ga.Code § 8-601. At that point, the property may be sold under Ga.Code §§ 8-901, 8-903. Second, she contends that seized property that is perishable or that incurs any storage expense may be sold summarily at any time after the seizure under Ga.Code § 39-1203
 
 
 [11]
 F.R.Civ.P. 23(b)(2) (emphasis added)
 
 
 [12]
 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1775, at 19-20, 21 (1972) (emphasis added). To the same effect is 3B J. Moore, Moore's Federal Practice P 23.40 (1976)
 
 
 [13]
 When faced with a situation when no named plaintiff can represent a subclass, a trial court should consider whether it is in the interests of justice and judicial economy to postpone dismissal as to the subclass for a specified period in which members of the subclass could become plaintiffs by amendment of the Complaint or by intervention and thereby save the subclass action. Cf. LaReau v. Manson, 1974 D.Conn., 383 F.Supp. 214; Sullivan v. Winn-Dixie Greenville, Inc., 1974 D.S.C., 62 F.R.D. 370. Because of our resolution of the merits in this case, we need not face this consideration
 
 
 [14]
 See Alderman, Default Judgments and Postjudgment Remedies Meet the Constitution: Effectuating Sniadach And its Progeny, 65 Geo.L.J. 1 (1976); Brabham, Sniadach Through Di-Chem And Backwards: An Analysis of Virginia's Attachment and Detinue Statutes, 12 U. Richmond L.Rev. 157 (1977); Catz & Robinson, Due Process and Creditor's Remedies: From Sniadach And Fuentes To Mitchell, North Georgia And Beyond, 28 Rutgers L.Rev. 541 (1975); Hansford, Procedural Due Process in the Debtor-Creditor Relationship: The Impact of Di-Chem, 9 Ga.L.Rev. 589 (1975); Kay & Lubin, Making Sense of the Prejudgment Seizure Cases, 64 Ky.L.J. 705 (1976); Newton, Procedural Due Process and Pre-Judgment Creditor Remedies: A Proposal for Reform of the Balancing Test, 34 Wash. & Lee L.Rev. 65 (1977); Newton, Fuentes 'Repossessed' Revisited, 28 Baylor L.Rev. 497 (1976); Nickles, Creditors' Provisional Remedies and Debtors' Due Process Rights: Attachment and Garnishment in Arkansas, 31 Ark.L.Rev. 607 (1978); Pearson, Due Process and the Debtor: The Impact of Mitchell v. W. T. Grant (pts. 1-2), 28-29 Okla.L.Rev. 743, 277 (1975-76); Rendleman, Analyzing the Debtor's Due Process Interest, 17 Wm. & Mary L.Rev. 35 (1975); Scott, Constitutional Regulation of Provisional Creditors' Remedies: The Cost of Procedural Due Process, 61 Va.L.Rev. 807 (1975); Note, Debtors' and Creditors' Due Process: Applying the Balancing Standard, 29 U.Fla.L.Rev. 554 (1977)
 Many of the cases are collected in Annot., 18 A.L.R.Fed. 223 (1974).
 
 
 [15]
 Fuentes was argued November 9, 1971, when the Supreme Court had two vacancies. On January 7, 1972, Justice Powell and Justice Rehnquist joined the Court. The seven justices who had been present at oral argument decided the case on June 12, 1972. See North Georgia Finishing, Inc. v. Di-Chem, Inc., 1975, 419 U.S. 601, 616 n.1, 95 S.Ct. 719, 42 L.Ed.2d 751 (Blackmun, J., dissenting)
 
 
 [16]
 It is possible that the Court's approval of the Louisiana sequestration procedure in Mitchell does not create a constitutional requirement that a Judge approve a prejudgment seizure. Because due process is a flexible concept, all that might be required is that "the official making the required determinations exercise some discretion and possess the necessary professional competence". Jonnet v. Dollar Savings Bank, 3 Cir. 1976, 530 F.2d 1123, 1130 n.15. See Di-Chem, 419 U.S. at 611 n.3, 95 S.Ct. 719 (Powell, J., concurring in the result). The Georgia attachment scheme challenged here would violate even this more limited version of due process
 We believe, though, that a fair reading of Mitchell and Di-Chem indicates that they do require judicial approval of a prejudgment seizure. After Mitchell and Di-Chem, we do not believe that we must engage in Ad hoc balancing in every case that comes before us. Rather, we agree with the Court of Appeals of the Eighth Circuit that "Justice White (in his opinion in Mitchell ) emphasized the Necessity of judicial supervision of the proceedings". Guzman v. Western State Bank, 8 Cir. 1975, 516 F.2d 125, 130 (emphasis added); See Guzman, 516 F.2d at 130-31 & n.7; Mississippi Chemical Corp. v. Chemical Const. Corp., 1977 S.D.Miss., 444 F.Supp. 925, 941; Betts v. Tom, 1977 D.Haw., 431 F.Supp. 1369, 1378; Aaron Ferer & Sons Co. v. Berman, 1977 D.Neb., 431 F.Supp. 847, 852 & n.6; Hamrick v. Ashland Finance Co., 1976 S.D.W.V., 423 F.Supp. 1033, 1036; United States General, Inc. v. Arndt, 1976 E.D.Wis., 417 F.Supp. 1300, 1313 (three-judge court); Terranova v. AVCO Financial Services, 1975 D.Vt., 396 F.Supp. 1402, 1404-05, 1407 (three-judge court); Thornton v. Carson, 1975 Ariz., 111 Ariz. 490, 533 P.2d 657; Ray Lein Const., Inc. v. Wainwright, 1977 Fla., 346 So.2d 1029, 1032; Unique Caterers, Inc. v. Rudy's Farm Co., 1976 Fla., 338 So.2d 1067, 1071; Hillhouse v. City of Kansas City, 1977 Kan., 221 Kan. 369, 559 P.2d 1148, 1153, 1156; Williams v. Matovich, 1977 Mont., 560 P.2d 1338, 1340-41. Cf. Hutchison v. Bank of North Carolina, 1975 M.D.N.C., 392 F.Supp. 888, 896-97 (three-judge court); Phillips v. Guin & Hunt, Inc., 1977 Fla., 344 So.2d 568, 572. But see Hood Motor Co. v. Lawrence, 1975 La., 320 So.2d 111. We also agree with Professor Scott that the Ex parte process envisioned in Mitchell and Di-Chem requires "participation of a judicial officer, specific factual allegations of entitlement, and access to an 'immediate' post-seizure hearing". Scott, Supra note 14, at 832-33. See Catz & Robinson, Supra note 14, at 559-60; Newton, 28 Baylor L.Rev. 497, Supra note 14, at 523 & n.107. But see Note, Supra note 14, at 564-68.
 Our holding is bolstered by noting that in Di-Chem the Court found the Georgia statutes to be inconsistent with Fuentes simply because under them "a bank account . . . was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt, all by a writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer". 419 U.S. at 606, 95 S.Ct. at 722. Thus, if Fuentes retains precedential force and the Court in Di-Chem indicated that it does it must stand for the proposition that, absent pre-seizure notice and opportunity to be heard, prejudgment seizure is unconstitutional unless it is authorized by a judge with discretion to deny the writ and is promptly followed by a hearing, or unless it occurs in an "extraordinary situation".
 In so holding, we express no opinion on the independent constitutional importance of any of the other saving characteristics of the Louisiana statute upheld in Mitchell.