Charity ARMSTEAD, et al., Plaintiffs,

v.

David PINGREE, et al., Defendants.

No. 84–96–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

Jan. 29, 1986.

Marilyn G. Rose, Jax. Area Legal Aid, Inc., Jacksonville, Fla., Susan C. Jamieson, Atlanta, Ga., for plaintiffs.

David Gauldin, Asst. Gen. Counsel, Dept. of Health & Rehabilitative Services, Tallahassee, Fla., for defendants.

## ORDER

MELTON, District Judge.

### FACTUAL BACKGROUND

Plaintiffs filed this class action on behalf of themselves and other mentally retarded residents of Northeast Florida State Hospital ("NEFSH"). NEFSH is a state-owned and operated institution for the mentally ill. Defendants are the Secretary of the Department of Health and Rehabilitative Services ("HRS") and other officials of the Mental Health and Developmental Services Division of HRS. Defendants are being sued in their official, not individual, capacities.

Count I of the First Amended and Supplemental Complaint ("First Amended Complaint") is brought by those plaintiffs who are solely mentally retarded and who have been found eligible for developmental services under chapter 393 of the Florida statutes.[1] Count I charges that conditions at NEFSH violate plaintiffs' rights under the due process clause of the fourteenth amendment, 42 U.S.C. § 1983, and 29 U.S.C. § 794 (§ 504 of the Rehabilitation Act of 1973). Count II alleges the same violations of the rights of those plaintiffs who are both mentally retarded and mentally ill (the "dually diagnosed").

Count III sets forth the claims of two individuals who were permitted to intervene in this action. See Court Order of Dec. 18, 1984. The first amended complaint alleges that the intervenors are mentally retarded but have been declared ineligible for services under chapter 393 because their retardation commenced after age eighteen.[2] First Amended Complaint at ¶¶ 53–55. The intervenors contend that defendants' actions have violated their rights under the due process clause, § 1983, and § 504.

Count IV alleges that plaintiffs are *de facto* involuntary patients and are entitled to and have been denied periodic post-commitment review. Plaintiffs further seek independent legal assistance to assure that those procedural protections are provided. The claims in Count IV are based on the equal protection clause and § 1983.

Count V is brought on behalf of those who are legal incompetents without guardians. The complaint alleges that defendants refuse to allow such persons to authorize the release of their records to attorneys. This policy is alleged to deny plaintiffs access to courts in violation of § 1983 and the due process clause.

The following motions are pending before the Court: (1) defendants' Motion to Dismiss; (2) plaintiffs' Motion to Amend the Class; and (3) plaintiffs' Objections to the Magistrate's Order of April 8, 1985.

---

1. The Legislature's intent in enacting chapter 393 was to develop community-based residential treatment programs for retarded individuals which would allow such "clients" to be "diverted or removed from unnecessary institutional placements." Fla.Stat. 393.062 (Supp.1985). Clients are defined as those accepted by HRS for retardation or developmental disability services. *Id.* 393.063(2). Retardation is defined as "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age 18." *Id.* 393.-063(23).

2. Plaintiffs alternatively plead that even if intervenor Fraser is found to be both mentally retarded and mentally ill, the conditions at NEFSH still violate his rights to a less restrictive setting, to have prevented the deterioration of his skills, to be free from physical restraint, and to be protected from abuse by non-mentally retarded patients.

## I. MOTION TO DISMISS

Defendants contend that this Court lacks jurisdiction because the amended complaint fails to present a federal question under 28 U.S.C. § 1331. Defendants argue that there is no federal constitutional right to treatment and services for the mentally retarded and that plaintiffs cannot rely on state law to create such rights.

■ As a general matter, the State has no constitutional duty to provide substantive services to its residents. *Youngberg v. Romeo,* 457 U.S. 307, 317, 102 S.Ct. 2452, 2458–59, 73 L.Ed.2d 28 (1982); *Maher v. Roe,* 432 U.S. 464, 469, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 284 (1977). When, however, persons are committed to state institutions, such as plaintiffs have been, then the state assumes the duty to provide certain services and care. *Youngberg,* 457 U.S. at 317, 102 S.Ct. at 2458–59. The Supreme Court in *Youngberg* held that mentally retarded persons committed to state institutions have liberty interests under the due process clause of the fourteenth amendment. Those liberty interests include safety, freedom from bodily restraint, and "minimally adequate or reasonable training to ensure safety and freedom from undue restraint." *Id.* at 319, 102 S.Ct. at 2459–60. The right to training includes such training as is necessary to prevent deterioration of basic self-care skills. *Society for Goodwill to Retarded Children, Inc. v. Cuomo,* 737 F.2d 1239, 1250 (2d Cir.1984).

■ Plaintiffs do not contend that the State has a constitutional duty to provide services and treatment to every mentally retarded person within its borders. The issue is not whether the State must provide such services. Rather, the issue is whether the State, once it has assumed the duty to provide care to the mentally retarded committed to state institutions, has carried out its duties in a constitutional manner. Plaintiffs allege that they have been committed to a state institution, that they have been subjected to physical restraints, that they have suffered physical harm from other patients, and that they have suffered a deterioration of skills as a result of their confinement. *See* First Amended Complaint ¶¶ 42–44, 50–51, 57. These allegations are sufficient under *Youngberg* to state a claim for relief under the due process clause and § 1983. *See Youngberg,* 457 U.S. at 324, 102 S.Ct. at 2462.

■ Defendants also contend that plaintiffs fail to state a claim for relief when they assert a right to training in order to be placed in less restrictive settings. Relying on *Society for Goodwill to Retarded Children, Inc.,* defendants assert that plaintiffs have no right to be housed in the least restrictive environment. The Court agrees that there is no constitutional requirement to place mentally retarded persons in the least restrictive environment. *Id.* at 1249; *Rennie v. Klein,* 720 F.2d 266, 269 (3d Cir.1983) (en banc); *Johnson v. Brelje,* 701 F.2d 1201, 1210 (7th Cir.1983). However, plaintiffs do have a due process right to training sufficient to prevent basic self-care skills from deteriorating. *Society for Goodwill to Retarded Children, Inc.,* 737 F.2d at 1250. The training to which plaintiffs are constitutionally entitled is that which is reasonable in light of plaintiffs' liberty interests balanced against the relevant state interests. *Youngberg v. Romeo,* 457 U.S. at 321–22, 102 S.Ct. at 2461. In determining what is reasonable training, the Court must give deference to the judgment of qualified professionals. *Id.* at 322, 102 S.Ct. at 2461.

■ Plaintiffs do not allege a constitutional right to training to enable them to function in the least restrictive environment. They do allege that due to lack of appropriate training, their skills have deteriorated. This allegation is sufficient to state a claim under *Society for Goodwill to Retarded Children, Inc.* Whether defendants' treatment and services actually fall short of the relevant professional standards is a factual inquiry that cannot be decided on a motion to dismiss.

■ Defendants next argue that § 504 of the Rehabilitation Act "does not, in and of itself, grant jurisdiction upon this Court

for relief to Plaintiffs." Motion to Dismiss Memorandum at 2. It is not entirely clear what defendants mean by this statement.[3] If defendants are contending that this Court lacks jurisdiction because plaintiffs do not have a private right of action to enforce § 504, that contention is without merit. *See, e.g., Arline v. School Board of Nassau County*, 772 F.2d 759, 760 n. 1 (11th Cir.1985). If defendants are arguing that plaintiffs should first exhaust any administrative remedies available pursuant to § 504, that argument is likewise meritless. *New Mexico Ass'n for Retarded Citizens v. New Mexico*, 678 F.2d 847, 850 (10th Cir.1982) (and cases cited therein). Plaintiffs have alleged and it is clear that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 to adjudicate the § 504 claim arising under the federal statutes.

■ Defendants' argument that Count IV fails to allege a federal question is also without merit. Count IV clearly alleges that defendants' actions have unconstitutionally restricted plaintiffs' access to courts, in violation of the fourteenth amendment and § 1983. Rights of access to the courts is a constitutional right guaranteed by the due process clause which assures that no person will be denied the opportunity to present his or her claim to the judiciary regarding constitutional violations. *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Ward v. Kort*, 762 F.2d 856, 858 (10th Cir.1985) ("[A] person under mental commitment is entitled to protection of his right to access to the courts.")

■ Defendants move to dismiss Count V which challenges defendants' practice of refusing to release the medical records of those plaintiffs who are legally incompetent and without guardians. Defendants' position is that access to these confidential records is a matter governed by state law. *See* Fla.Stat. §§ 393.13(3)(m)(2), 394.459(9) (Supp.1985).[4] Moreover, defendants contend that counsel for plaintiffs must litigate in state court each case for which release is sought.

Although defendants cite no legal authority for their position, it appears that they may implicitly rely on the principles expressed in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). ("*Pennhurst II*"). If so, such reliance is misplaced.

In *Pennhurst* II, the Supreme Court held that the eleventh amendment bars a feder-

---

**3.** At the hearing on plaintiffs' motion to certify the class, counsel for defendants furnished the Court a copy of the recent Supreme Court opinion of *Atascadero State Hospital v. Scanlon*, —— U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Defendants did not file a supplemental memorandum explaining the relevance of that case to the issues raised in the motion to dismiss. In *Atascadero*, the Court held that the eleventh amendment bars suits against the state by litigants seeking retroactive monetary relief under § 504 of the Rehabilitation Act of 1973. The Court based its holding on the finding that the Rehabilitation Act did not "evince an unmistakable congressional purpose, pursuant to § 5 of the Fourteenth Amendment, to subject unconsenting states to the jurisdiction of the federal courts." *Id.*, 105 S.Ct. at 3150. Thus, § 504 does not abrogate a state's eleventh amendment immunity.

In this case, plaintiffs have sued state officials, seeking prospective injunctive relief. Generally, the eleventh amendment bars suits against state officials if the relief sought nominally against the officer would in fact operate against the state. *Hawaii v. Gordon*, 373 U.S. 57, 58, 83

S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963). This general rule, however, is subject to an important exception. A suit which seeks prospective injunctive relief against a state official for alleged violations of federal law, is not an action against the state. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under this "stripping doctrine," a state officer is stripped of his official authority by the allegations of federal law violations. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The relief, however, is limited to prospective injunctive relief. *Id.; Everett v. Schramm*, 772 F.2d 1114, 1118 (3d Cir.1985). Because this action falls within the *Ex Parte Young* exception it is not barred by the eleventh amendment. Therefore *Atascadero* is inapposite to the instant case.

**4.** These sections provide that the incompetent client's record shall only be released to attorneys "having need of the record to aid the client" if the parent or legal guardian of the incompetent so authorizes. The record may also be released by order of the court. Fla.Stat. 393.13(m)2.b (Supp.1985).

al suit against state officials on the basis of state law. *Id.,* 104 S.Ct. at 917. Justice Powell, writing for the majority, noted that under *Ex Parte Young,* prospective injunctive relief may be granted against state officials whose conduct violated *federal* law. *Id.* at 909. In those instances, state sovereign immunity concerns must yield to the need to promote the supremacy of federal law. There is no need to protect federal interests, however, when a plaintiff alleges that a state official violated state law. Such matters must be resolved by state courts. *See generally* Brown, *Beyond Pennhurst—Protective Jurisdiction, The Eleventh Amendment, and the Power of Congress to Enlarge Federal Jurisdiction in Response to the Burger Court,* 71 Va.L.Rev. 343 (1985); Shapiro, *Wrong Turns: The Eleventh Amendment and the Pennhurst Case,* 98 Harv.L.Rev. 61 (1984).

In Count V, however, plaintiffs have alleged violations of federal, not state, law. Plaintiffs contend that the withholding of records interferes with the right of meaningful access to the courts in violation of the fourteenth amendment and § 1983. Therefore, *Pennhurst* II poses no obstacle to this Court's determining the access to records issue. The fact that compelling compliance with federal law may incidentally require state officials to comply with state law does not bar the Court from resolving the federal claims.

The Court finds that these records are critical to plaintiffs' counsel for determining, *inter alia,* whether defendants have properly classified a plaintiff as mentally retarded, dually diagnosed or mentally ill. To require counsel for plaintiffs to gain approval from a state court for release of each record would hopelessly mire this action. Such a result is clearly not required by the eleventh amendment in a suit which seeks to vindicate federal constitutional rights.

## II. MOTION TO AMEND THE CLASS

Based upon the parties' stipulation that the requirements of Fed.R.Civ.P. 23(a),

(b)(1), and (b)(2) had been satisfied, the Court certified the following class:

> Those persons who are mentally retarded, not mentally ill, who were residing at Northeast Florida State Hospital on February 28, 1984, and all future residents of Northeast Florida State Hospital who are mentally retarded and not mentally ill.

*See* Order entered June 27, 1984. Subsequently, plaintiffs moved to amend the class description to include:

> All persons who are mentally retarded, including those defined as eligible for developmental services under Chapter 393, Fla.Stat., and those who are functionally mentally retarded but not eligible for developmental services under Chapter 393, Fla.Stat., because the mental retardation commenced after the age of 18, and who were confined in Northeast Florida State Hospital on or after February 20, 1984, or will be confined in Northeast Florida State Hospital in the future.

Plaintiffs suggest that the class could be divided into the following subclasses: (1) those who are solely mentally retarded; (2) those who are both mentally retarded and mentally ill (the "dually diagnosed"); and (3) those who are "functionally mentally retarded" but ineligible for developmental services under Chapter 393 of the Florida Statutes because the mental retardation developed after the age of eighteen.

There are four prerequisites which must be met under Rule 23(a) for certification of a class action: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's claims or defenses are typical of the claims or defenses of the class; and (4) the representative will fairly and adequately protect the class. Defendants argue that plaintiffs fail to satisfy the numerosity and commonality of law or fact requirements.

### A. *Numerosity*

At a hearing on the motion to amend the class, counsel represented that at that time

there were approximately twenty-five (25) residents of NEFSH who were solely mentally retarded; forty-nine (49) residents who were diagnosed as both mentally retarded and mentally ill; and two (2) residents who were "functionally mentally retarded."

Under Rule 23(c)(4), the Court may divide the class into subclasses, and each subclass will be treated as a class. Each subclass, however, must independently meet the requirements of Rule 23. *Johnson v. American Credit Co.*, 581 F.2d 526, 532 (5th Cir.1978). Defendants contend that the proposed subclasses fail to meet the numerosity requirements of Rule 23(a).

As an initial matter, it should be noted that Rule 23(a) will be read liberally in the context of a civil rights suit. *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975). This "general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)." *Id.* at 1100.

The numerosity requirement should not be applied in a yardstick fashion —i.e. whether 25 class members are enough or too few to satisfy Rule 23(a)(1). A cursory review of the case law indicates that classes with fewer have been certified, and those with many more have been denied certification on the basis of lack of numerosity. *See, e.g., Kilgo v. Bowman Transportation, Inc.*, 87 F.R.D. 26, 29–30 (N.D.Ga.1980) (23 and unknown future members satisfied numerosity requirement); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (D.C.Pa.1968) (class of 25 certified), *but see, Crawford v. Western Electric Co.*, 614 F.2d 1300 (5th Cir.1980) (34 members did not meet numerosity requirement). The primary focus is whether joinder of the proposed class members is impracticable.

With regard to the first two proposed subclasses, the solely mentally retarded and the dually diagnosed, the Court is of the opinion that joinder is impracticable. Although the proposed subclasses are relatively small, each subclass includes future residents of NEFSH who are mentally retarded or dually diagnosed. The joinder of unknown persons is clearly impracticable. *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982); *Jones v. Diamond*, 519 F.2d at 1100. The consideration of future potential class members is particularly appropriate in this action which seeks only prospective injunctive relief. As such, plaintiffs are attempting to deter conduct which allegedly not only infringes their constitutional rights but will also infringe the rights of future residents of NEFSH. *See Gurmankin v. Costanzo*, 626 F.2d 1132, 1135 (3d Cir.1980) (numerosity requirements poses less of an obstacle when plaintiffs seek prospective remedial relief rather than damages). The Court has also considered the ability of individual plaintiffs to bring his or her own separate action if the amended class certification were denied. Considering plaintiffs' confinement, their economic resources, and their mental handicaps, it is highly unlikely that separate actions would follow if class treatment were denied. This is precisely the type of group which class treatment was designed to protect. Therefore, the Court finds that the two subclasses of the solely mentally retarded and the dually diagnosed satisfy the numerosity requirement of Rule 23(a)(1).

Plaintiffs' third proposed subclass, the functionally mentally retarded, does not, however, meet the numerosity requirement of Rule 23(a)(1). It is not impracticable to join two known class members. To the extent that these two individuals fall within either the solely mentally retarded or dually diagnosed subclass, they will be treated as members of this class action.

### B. *Common Questions of Law or Fact*

Defendants next argue that the proposed subclasses do not satisfy the commonality requirement of Rule 23(a)(2). Rule 23(a)(2) requires that there be questions of law or fact common to the class, or

as in this case, common to the subclass. *See* Rule 23(c)(4)(B). This commonality provision does not require complete identity of legal claims. *Johnson v. American Credit Co. of Georgia,* 581 F.2d 526, 532 (5th Cir.1978). Nor will class certification be denied because of some factual variances among class members' claims. *Patterson v. General Motors Corp.,* 631 F.2d 476 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981); *Georgia State Conference of Branches of NAACP v. Georgia,* 99 F.R.D. 16, 27 (S.D. Ga.1983).

■ Defendants do not contest that there are not common issues of law or fact within each subclass. Clearly there are both common questions of law and fact within each subclass. Defendants' argument is that there is not sufficient commonality of law and fact to link the subclasses together. The Court disagrees. The conditions at NEFSH and defendants' policies regarding treatment of those residents who suffer, in varying degrees, from mental retardation are examples of the factual questions linking the subclasses.

### C. *Typicality and Adequacy of Representation*

■ Rule 23(a)(3) requires that the claims or defenses of the representatives must be typical of the claims and defenses of the class. Rule 23(a)(4) requires that the representative must fairly and adequately protect the class. The Court finds that the representatives of each subclass meet the requirements of typicality and adequacy of representation. It is not necessary, as defendants seem to suggest, that the representative of the solely mentally retarded subclass have claims which are typical of the dually diagnosed subclass. Each subclass has its own adequate representative.

Those representatives need not be interchangeable.

Defendants do not challenge the proposed amendments under Rule 23(b). The Court finds this action could be maintained either under Rule 23(b)(1)(A) or Rule 23(B)(2).[5] Therefore, plaintiffs' motion to amend the class will be granted. This action shall be subdivided into two subclasses: (1) all members of the class who are solely mentally retarded and (2) all members of the class who are both mentally retarded and mentally ill.[6]

### III. PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S ORDER

Plaintiffs filed objections to the Magistrate's Order of April 8, 1985. The Magistrate's Order provided "[o]nce the District Judge determines the constitution of the class, this matter may, upon Motion of Plaintiffs, be revisited." The resolution of the motion to dismiss and the motion to amend the class should resolve some of the discovery disputes that have plagued this case. Therefore, plaintiffs' objections will be overruled. If the parties are unable to resolve their differences, plaintiffs may refile the appropriate motions.

Accordingly, it is

ORDERED AND ADJUDGED:

1. That defendants' Motion to Dismiss is hereby denied;

2. That plaintiffs' Motion to Amend the Class is granted in accordance with this Order; and

3. That plaintiffs' Objections to Magistrate's Order are hereby overruled.

---

5. Defendants initially stipulated that those requirements were met by the first proposed class. Plaintiffs' proposed amendments do not affect whether the requirements of Rule 23(B) have been satisfied.

6. The Court does not deem it necessary at this time to create a third subclass of those members of the class who are legally incompetent. *See Johnson v. American Credit Co. of Georgia,* 581 F.2d 526, 632 (5th Cir.1978) (within court's discretion whether to create subclasses).