Joan Rance VUYANICH

v.

REPUBLIC NATIONAL BANK OF DALLAS.

Ellen JOHNSON

v.

REPUBLIC NATIONAL BANK OF DALLAS.

Civ. A. Nos. CA–3–6892–G and CA–3–7949–G.

United States District Court, N. D. Texas, Dallas Division.

March 15, 1978.

Joann Peters, Anderson & Peters, Dallas, Tex., for plaintiff Vuyanich.

Linda N. Coffee, Palmer, Palmer & Coffee, Dallas, Tex., for plaintiff Johnson.

J. Carlisle DeHay, Jr., and G. Duffield Smith, Jr., Gardere, Porter & DeHay, Dallas, Tex., for defendant.

### CLASS CERTIFICATION ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

Joan Vuyanich filed the first of these two Title VII actions on March 22, 1973, five years ago and almost four years after she filed her EEOC charge on August 15, 1969. Ellen Johnson filed her EEOC charge on October 15, 1971, and filed her suit on December 3, 1973. Both are black women and both allege that they are victims of the defendant's discriminatory employment practices. On November 7, 1974, another court conditionally certified the Vuyanich case as a class action on behalf of a broad class of women and blacks and on March 12, 1976, refused to strike the sex allegations from that class. *See, Vuyanich v. Republic National Bank of Dallas,* 409 F.Supp. 1083 (N.D.Tex.1976). After two more years of discovery squabbles and arguments concerning the scope of the class, the court held an evidentiary hearing on February 3 and 4, 1978, to update and redefine the class. And after reflection, it is the court's order that these cases are consolidated and certified to proceed as a class consisting of:

> All females of all races and all blacks of either sex; 1) who are or have been employed by the Republic National Bank on or after February 16, 1969, and 2) who applied for employment but were not hired at the Republic National Bank on or after February 16, 1969 to date.

Joan Rance Vuyanich and Ellen Johnson are the designated class representatives, and Linda N. Coffee and Joann Peters are named attorneys for the class.

### The Defendant and its Personnel Practices

The defendant is the largest bank in the South with total assets exceeding five billion dollars (1976 Annual Report) employing between 1,500 to 2,300 employees, most at a single location in Dallas, Texas. The 1976 EEO–1 Report classified the work force as 58% "Office-Clerical", 25% "Officials-Managers", 9% "Professionals", and the remainder "Sales, Technical, and Blue Collar Workers." All employees except officers, managers, and a few first-line supervisors are subject to the Fair Labor Standards Act.

There are 514 officers divided into five levels. Level One consists of banking and trust officers. This is the lowest or entry level. Assistant vice-presidents form the second level, vice-presidents the third, and senior vice-presidents the fourth, leaving executive vice-presidents as the top level. Each vice-president also has a title descriptive of his function such as manager or trust officer. The bank's practice is to promote employees to officer, not hire directly

into that level. Entry into Level One requires recommendation by department and division managers, and all officers are elected by the Board of Directors. The president usually nominates the senior officers.

The Executive Committee, composed of the chairman of the board-chief executive officer, the president, nine executive vice-presidents, and at least 25 senior vice-presidents, makes the hiring, promotion, and compensation decisions. All members are white males.[1] The executive vice-presidents also head the bank's various departments and the senior vice-presidents head the divisions within each department.

In 1973 the number of pay grades for nonexempt workers was reduced from 17 to 10, with grade 10 the highest pay level.

### Plaintiffs' Evidence

A history of discrimination was shown. For example, in December 1969, shortly after Vuyanich filed her EEOC charge, blacks constituted 7.56% of defendant's work force but only .34% of its managers. None were officers. Nor were there any female officers then, although women represented 58% of the defendant's total work force. By the time of the Johnson charge (October 15, 1971), only two female officers had been appointed. By 1976 females made up 60% of defendant's work force, but only 12.9% of its officers. But virtually all the females were in the lower two of five levels of officers. The improvement from 1970 was also shown by the statistics. Approximately 85% of its female employees held clerical positions. While constituting over half of the bank's work force in 1975, females held only 9.2% of its officer jobs.

By 1977 the number of black employees hired increased to approximately 14% of defendant's work force. But less than 2% of them were categorized as EEO officers

or managers. The defendant in 1977 had 514 officers—three were black. Defendant has approximately 150 vice-presidents. By 1976, four were female. By 1976, although women represented almost 60% of the bank's total work force, only 12.9% were officers and over 75% held nonexempt positions.

This data, only sketchily summarized here, suggests strongly that plaintiffs have demonstrated at least prima facie that defendant's personnel practices have been infested to the core by racial and sex discrimination.[2]

### The Specific Requirements of Rule 23

 That sex or race claims often present issues of inherently class-wide impact does not mean that Title VII cases are exempt from or automatically meet the requirements of Rule 23. Otherwise stated, all proffered class actions must be subjected to the discipline of Rule 23 analysis.

### The 23(a) Quartet

 1. *The Class is so Numerous that Joinder of all Members is Impracticable.* The bank urges that the "numerosity" requirement is not met if the court accepts its proposed class definitions. The bank's suggestions are not acceptable. It is not helpful to suggest "classes" composed of " . . . all blacks discharged on the grounds they were married to a person of another race . . ." or "females with liberal arts bachelor's degrees who were denied employment with defendant in its management training programs on the basis of sex . . . ." These are gerrymandered strawmen. A class representative and a class member must be similarly, not identically, situated. It is only common sense that an effort to group into a class

---

1. " . . . promotion/transfer procedures which depend almost entirely upon the subjective evaluation and favorable recommendations of the immediate foreman are a ready mechanism for discrimination . . . We and others have expressed a skepticism that black persons dependent directly on decisive recommendations from Whites can expect nondiscrimina-

tory action." *Rowe v. General Motors Corp.,* 457 F.2d 348, 359 (5th Cir. 1972).

2. " . . . statistical evidence in Title VII cases has often been given critical weight in this circuit . . . ". *See, Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, n. 34 at 225 (5th Cir. 1974).

persons with interests common to the claimed illicit conduct is not aided by extraneous requirements for class membership. The rejection of defendant's proposed "classes" leads inevitably to the conclusion that "numerosity" is present.

■ 2. *There are Questions of Law or Fact Common to the Class.* The bank argues that plaintiffs fail to meet this requirement because they have not proved specific employment practices claimed to birth discrimination. Herein may lie the basic disagreement between the two sides. The bank's argument that plaintiffs have only shown several different claims has surface plausibility. But closer examination reveals the contention is fundamentally flawed by an erroneous legal premise. The issue is whether the proposed class actually presents distinctly discrete claims or whether the claims, though possessing different factual characteristics, are but different manifestations of a central core violation. Plaintiffs' charge, and have virtually made out a phase I prima facie case that all complaints flowed from a central policy to hire blacks and females only into lesser paying jobs and thereafter deny them equal promotion opportunity. In doing so, they have exceeded the requirements for demonstrating the existence of a class. Indeed plaintiffs' proof is more the evidence expected in a phase I hearing than in hearing a class certification. See *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437 (5th Cir. 1974), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1975); *Swint v. Pullman-Standard,* 539 F.2d 77 (5th Cir. 1976). In Title VII terms, it is plant-wide and across the board discrimination.

The attack of plaintiffs may with further discovery become more focused. It may be, however, that this crisper focus (and precisely put class questions) will emerge only from the defense of a prima facie case made out by a statistical analysis of the bank's personnel policy. For example, the data does not suggest sex discrimination manifested by general resistance to the hiring of females; it does suggest that sex was a factor in hiring for managerial and officer trainee positions. The focus of sex discrimination may be promotion opportunity of females and claimed lock-in to clerical positions. At the same time the data suggests racial discrimination both in resistance to hiring and promotion. A number of the bank's personnel practices may be put in issue such as testing of officer potential by Sadler & Associates, the subjectivity of promotion decisions viewed against a history of sex and racial discrimination, the requirement of a college degree for officer status, the effect of the Hay system of compensation in an employment environment still evidencing results of historical segregationist and sexist patterns.

■ 3. *The Claims or Defenses of the Representative Parties are Typical of the Claims or Defenses of the Class.* Defendant asserts that "each claim involved a separate fact situation, and unless it can be shown that defendant's action in each of such cases was a part of, or resulted from, a unifying practice in policy, the claims simply cannot be said to be 'typical'." Without accepting the full sweep of this broad assertion the quick answer of plaintiffs prevails. Plaintiffs' data does reveal a central policy. It is not now necessary and probably not at a phase I hearing to identify specific employment practices. The device of subclassing and class redefinition is an available tool to deal with problems of dissimilarity. *See, United States v. United States Steel Corp.,* 520 F.2d 1043, 1051 (1975), where the court urged the use of this device where there was " . . . A large variety of employment practices coalesced to greater and lesser degrees to affect groups of black employees across different plants, departments, job classifications, and earned seniority levels throughout . . .", 520 F.2d 1051.

■ 4. *The Representative Parties Will Fairly and Adequately Represent the Interest of the Class.* The defendant has challenged the adequacy of representation of Vuyanich and Johnson. The court finds both to be interested and active class representatives. The fact that Johnson has filed many discrimination suits underscores her

interest in asserting the rights of the class in this action. The bank faults Ms. Johnson for a " . . . proclivity for shouting 'discrimination' each time that she feels slighted by an employer or a prospective employer . . .", Supp. Brief of Defendant, p. eight. The data revealed to date does not support the bank's effort to posture itself as a model employer harassed by a frivolous assertion. Because Ms. Johnson's claim is far from frivolous, that she has made similar claims against others is relevant only on the question of her interest and commitment to this case. The Johnson case did not, according to the "docket sheet," move for substantial periods of time. The bank, however, in pointing this out, ignores the fact that there was substantial activity in its companion case, Vuyanich.

The bank also urges that much the same question of interest and commitment of Ms. Vuyanich is raised because she moved to Atlanta, Georgia in June 1973 and does not personally seek reinstatement. Neither circumstance makes her an inadequate representative. First, her departure from the bank is claimed to be at the hand of the bank. The passage of time is a function of lack of progress in this suit. And this court is not prepared to charge all or most of that delay solely to her or her counsel. For reasons not immediately apparent, this suit before being transferred to this court had been transferred respectively to Judges Porter, Woodward, Taylor, and Mahon. The persistence of the class representative and their attorneys in the pursuit of this case over the past five years demonstrates commitment. In sum, on these facts, the lapse of time from Vuyanich's discharge ought not defeat her efforts to represent a class of persons who question ongoing employment practices.

Moreover, as otherwise pointed out in the order, it is this court's view that *Rodriquez* did not overturn this circuit's view that an applicant denied employment is not necessarily foreclosed from representing employees hurt by practices flowing from the same animus.

The rules of class membership and adequacy of representation are neither mechanical nor absolute. The ultimate judgment is whether the proffered representation is adequate and injury flowing from the same animus has been suffered. These are judgments, not mathematically precise calculations. Not surprisingly the courts of appeals have recognized the practical value of deferring to trial court discretion in their exercise, calling so much as it does upon parochial assessment of the counsel and personalities involved.

The Rule 23 requirements are overlapping. The inquiry into whether the class representative's claims case are typical implicate many of the concerns of the requirement of class membership. In *East Texas Motor Freight System v. Rodriquez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the class representative, unlike Vuyanich and Johnson, had suffered no injury from defendant's policies. *Rodriquez* does not mean that a class representative must suffer the *same* injury as his class members. Such a strict reading of its holding would frustrate the goals of Title VII. And Rule 23 must be interpreted in a manner congruent to the substantive rights sought to be enforced. As a person allegedly aggrieved by some of defendant's practices, Vuyanich and Johnson may represent other class members suffering from different practices, but the product of the same animus, certainly where there is a nexus among the practices. *See, Payne v. Travenol Lab., Inc.,* 565 F.2d at 900 (5th Cir. 1978).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This requirement has been met as demonstrated by the statistics cited above.

The bank reurged the motion to strike the sex allegations from the Vuyanich complaint. The motion to strike is DENIED. The Fifth Circuit in *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466

(5th Cir. 1970) stated that the EEOC investigation cannot be larger than that "which can reasonably be expected to grow out of the charge of discrimination." This language means that the EEOC in its investigation cannot enlarge the scope of inquiry suggested by a complainant's charge; it does not mean that by confining its investigation to less than the scope of inquiry suggested by a complainant's charge, the EEOC can limit a subsequent civil suit by the complainant. Vuyanich's charge with the EEOC was arguably sufficient to give notice to defendant that she was charging both sex and race discrimination.[3] In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798–799, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) the Court stated: "The Act does not restrict a complainant's right to sue to those charges as to which the Commission has made findings of reasonable cause, and we will not engraft on the statute a requirement which may inhibit a review of claims of employment discrimination in the federal courts." Thus, if an EEOC finding of no probable cause will not defeat a plaintiff's right to sue in federal court, certainly the EEOC's failure to investigate should not bar a plaintiff's right to sue on a charge which was properly noticed to the EEOC and to the defendant.

### Conclusion

For the minority there is bitter irony in the circumstance that after over 12 years under Title VII only three blacks have managed to meet the "standards" for filling one of the 514 officer positions of the largest bank in the South, and one of its claimed civic leaders. To accept this "statistic" with aplomb renders Title VII a cruel hoax. The court is well aware that this is only a hearing regarding class questions and looks forward to a full development of the explanation of these apparent statistical disparities.

3. The court has doubt that Vuyanich gave adequate notice that she was complaining of sex discrimination and may reconsider Judge Mahon's earlier order at any relief stage. Then the time period for such questions as back pay

One final observation must be made. Much of the bank's evidence has suggested recent efforts to free its business practices of racist and sexist taints. As the bank doubtlessly is aware, or ought to be aware, there is no good faith defense to the legal and moral imperative that employee merit cannot cut along lines of race or sex. To those qualified, the doors cannot be closed. To those not qualified but struggling to get there, hope must not be denied.

The requirements of Rule 23 having been met, a phase I trial upon the merits of the class claims will commence on July 24, 1978.

will be significant. The history of the bank's personnel policies relevant to the determination of liability are not confined to the period the bank has exposure to back pay liability.