**Elaine LIGON**

v.

**FRITO–LAY, INC.**

**No. CA3–76–901–F.**

United States District Court,
N. D. Texas,
Dallas Division.

March 20, 1979.

James C. Barber, Law Offices of James C. Barber, Dallas, Tex., for plaintiff.

Susan A. Cahoon, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., John B. Nelson, Dallas, Tex., for defendant.

## OPINION

ROBERT W. PORTER, District Judge.

The plaintiff in this case, Elaine Ligon, has moved the Court to certify a class comprised of all past, present and future female employees of Frito-Lay, Inc. at any facility located in the Dallas/Fort Worth Standard Metropolitan Statistical Area (SMSA). Defendant contests the certification of any class, but if a class is certified, the defendant argues that the class should be restricted to applicants for exempt jobs with the defendant. A class certification hearing was held by this Court on January 30, 1978 at which time the Court heard testimony of various witnesses, and received documentary and deposition evidence. Defendant has also filed a motion to dismiss part of Ms. Ligon's complaint.

Ms. Ligon applied in June, 1973 to Frito-Lay for an exempt level, salaried position as a personnel administrator in its Headquarters Employee Relations Department. "Exempt" jobs are generally filled by persons having a specific professional background. "Non-exempt" employees include, among others, clerical employees and secretaries. Craftsmen, laborers and service personnel are "hourly" employees.

On her application form Ms. Ligon stated that she "[w]ould prefer job similar to job at TI [Texas Instruments]", where she had worked as a "personnel administrator" from 1965 to 1970, conducting interviews of applicants and administering tests to applicants for employment. When she applied to Frito-Lay Ms. Ligon preferred an exempt position in which she could earn at least $12,000 per year.

At the time Ms. Ligon applied to Frito-Lay, according to Mr. Grissom, there were no non-exempt positions available which would have enabled Ms. Ligon to earn $12,000 per year. On the other hand, six days after she applied and about one month after she applied Defendant filled two positions for which Ms. Ligon was apparently qualified. Ms. Ligon also indicated that she would have accepted a non-exempt position, such as a route salesman, if that would have led to a management position. Ms. Ligon is currently employed in personnel management with a company in Freeport, Texas, but is willing to return to Dallas if she is offered an exempt position at Frito-Lay.

In addition to completing an application for an exempt position at Frito-Lay, Ms. Ligon also completed portions of the Hackemann Battery. The Hackemann Battery is a generalized assessment given by Frito-Lay to some or all applicants for exempt level positions. When positions are available meeting an applicant's expressed interests and qualifications, the Hackemann Battery, if completed, is sent to an outside psychological consultant who in turn provides to Frito-Lay a narrative description of the applicant. Defendant asserts that because no positions were available at Frito-Lay at the time Ms. Ligon applied which met Ms. Ligon's expressed interests and qualifications, the questionnaire completed by Ms. Ligon was not shown or sent to an outside consultant for a written report. The defendant's personnel director, however, also indicated that often verbal reports were received from the consultants. There is some dispute in the current record concerning whether the results of her Hackemann Battery test were used in any way by Frito-Lay personnel.

## DEFENDANT'S MOTION TO LIMIT SCOPE OF LIGON COMPLAINT

Defendant contends that although Ms. Ligon apparently filed a timely charge with the EEOC, she has attempted in this lawsuit to expand her allegations beyond her charge to the EEOC. Ms. Ligon's charge to the EEOC stated in full: "I believe the company has discriminated against me because of my sex (female) by refusing to hire me on or about June 27, 1973". Although this complaint was apparently limited to hiring practices, defendant argues that Ms. Ligon went far beyond the scope of hiring discrimination when she filed her complaint and attempted to have this Court consider matters never investigated by the EEOC, such as promotion policies, terms and conditions of employment, and discharge practices.

The Fifth Circuit in *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970) stated "[w]ithin this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" to the EEOC. In *Sanchez,* the Court held that a complainant's failure to allege the proper basis for the employer's discriminatory actions *was not* grounds for dismissal (sex rather than national origin). The Court held the sex discrimination charge was directly related to and grew out of the original charge, and therefore supported the plaintiff's federal court allegations of national origin discrimination. *Id.* at 466.

Plaintiff has delineated two policies which allegedly limit the hiring opportunities for female employees at Frito-Lay and which plaintiff alleges also limit hiring and promotion of female employees at the company. The first is defendant's testing policy and the second is an employment system which relies upon evaluations made by predominately male supervisors, officials and managers, in making decisions regarding hiring, placement, and promotion; which evaluations are unguided by formal and standard policies.

While the EEOC apparently confined its investigation to the area of hiring discrimination, it seems reasonable to this Court to conclude that an allegedly discriminatory method of testing and subjective review by male personnel in hiring, which is also used in promotion and other areas of employment, could be reasonably expected to grow

out of the EEOC charge of hiring discrimination.

## STANDING

■ Defendant contends that Ms. Ligon lacks standing to represent the class proposed in her complaint. The Article III standing requirement is analogous to the requirements of Federal Rule of Civil Procedure 23(a) and often courts use similar reasoning when discussing "constitutional" standing under Article III and "procedural" standing under Rule 23. *See East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (hereinafter recited as "Rodriguez") (Supreme Court relied on cases applying constitutional standing principles in ruling that the named plaintiffs did not satisfy the requisites for class certification under Rule 23(a)).

■ Plaintiffs who seek to represent a class in a Title VII action "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent". *Warth v. Seldin,* 422 U.S. 490 (1974) at 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343. Defendant reads *Warth* to mean that Ms. Ligon, as an applicant for a job at Frito-Lay, cannot represent all present, past and future female employees of Frito-Lay in the North Texas area, but rather can only represent a class composed of those persons who allegedly suffered discrimination from Frito-Lay's hiring practices. Defendant notes that nowhere in the complaint does Ms. Ligon allege that she was ever hired by Frito-Lay, worked for Frito-Lay, had been discharged by Frito-Lay, or otherwise been subjected to any of the discriminatory practices which might have affected females who were or are actual employees. She concluded that she lacked personal knowledge about the company's practices which affected employees but not applicants, such as promotion and discharge. (Ligon deposition pages 145–146).

Defendant also contends that Ms. Ligon lacks standing to represent persons who applied for non-exempt positions with Frito-Lay. Ms. Ligon submitted an application form to Frito-Lay in which she stated that she sought a job similar to the job she had held at TI where she had worked as a personnel administrator from 1965 to 1970. (Ligon deposition, Defendant's Exhibit 1). She left Texas Instruments in 1970 because of her marriage, and was next employed in March, 1974 (after her unsuccessful application to Frito-Lay) as a personnel director for the R. E. Cox Co. During the ten years prior to her application to Frito-Lay, Ms. Ligon only applied for jobs involving personnel work, and it is clear from the record that she has consistently sought jobs in exempt positions.

Recruiting for exempt employees differs markedly from recruiting for non-exempt employees, according to defendant. Frito-Lay typically places advertising in trade journals or the Wall Street Journal for exempt employees; on the other hand, most of Frito-Lay's efforts to recruit non-exempt employees is done through local newspaper advertising. (Hearing transcript page 100). Only exempt applicants complete the questionnaire, which plaintiff contends defendant used to discriminate against her application and the applications of the class of females she seeks to represent.

Defendant relies on a number of Fifth Circuit decisions which, defendant contends, illustrate the Fifth Circuit's concern for narrowly defined classes which exclude those persons who lack sufficient "nexus" with the plaintiff of the proposed class. *See Huff v. N. D. Cass Co.,* 485 F.2d 710, 714 (5th Cir. 1973) (plaintiff lacked sufficient "nexus" with alleged class); *Wells v. Ramsey, Scarlett & Co., Inc.,* 506 F.2d 436 (5th Cir. 1975). Defendant also contends that *Rodriguez* holds that where the record at the time of a certification decision is clear in showing that as to many of the challenged practices, the named plaintiff has not been a victim of discrimination, the plaintiff cannot represent a class of people who may have suffered discrimination from those challenged practices.

Plaintiff first contends that as Judge Higginbotham wrote in *Vuyanich v. Republic National Bank of Dallas,* 78 F.R.D. 352 (N.D.Tex.1978) "*Rodriguez* does not mean that a class representative must suffer the same injury as his class members. Such a strict reading of its holding would frustrate the goals of Title VII." "As a person allegedly aggrieved by some of the defendant's practices, Vuyanich and Johnson may represent other class members suffering from differing practices, but the product of the same animus, certainly where there is a nexus among the practices." Thus, the plaintiff contends that a person who has suffered sex discrimination in not being hired may represent those who have suffered from different practices so long as the animus, sex discrimination, is the same. "Moreover, as otherwise pointed out in the order, it is this Court's view that Rodriguez did not overturn this circuit's view that an applicant denied employment is not necessarily foreclosed from representing employees hurt by practices flowing from the same animus." *Id.*

Even if this court does not buy plaintiff's animated argument, plaintiff argues that she has been aggrieved by the same policies and procedures which also act to limit employment opportunities for female employees of Frito-Lay. First, plaintiff asserts that she was requested to take a personality inventory test, referred to as the Hackemann Battery, as part of her application for employment with Frito-Lay, an exam which is given to a great majority of applicants for exempt jobs and is taken into consideration by supervisors when considering individuals for promotions. See, PX 2–A, Grissom page 73 1. 310; 91 1 22, page 92 line 11. Secondly, plaintiff argues that Frito-Lay uses an employment system which relies for decision making regarding hiring, placement, promotion and pay rates upon subjective evaluations made by predominately male supervisors, officials and managers, unguided by formal and standardized policies. This policy applies to applicants, and current employees when they are considered for promotions and raises, and was condemned in *Rowe v. General Motors Corp.,* 457 F.2d 348, 359 (5th Cir. 1972).

Plaintiff notes that the interview is the most important single step in the hiring and screening process, and during the last three years, the interviewers were comprised entirely of males. No objective standards apparently exist or govern decisions made by the male interviewing staff; rather the decision is highly subjective. Promotions at Frito-Lay apparently follow a similar pattern of subjective evaluations conducted by a staff of male supervisors.

Defendant rejects the suggestion that a subjective evaluation utilized by Frito-Lay in hiring and promotional decisions is sufficient "nexus" to bind together a class. According to defendant's witnesses at the certification hearing, at various Frito-Lay facilities in the Dallas/Fort Worth area the dominant factor in promotional decisions is seniority, a system which is governed by a collective bargaining agreement, and compensation in non-exempt positions is based upon hourly rates, commissions, etc., rather than subjective review. Finally, defendant raises the complexity of the statistical data, and breadth of testimony that the Court would have to consider in making its findings in this case.

■ The Fifth Circuit has continued to recognize the validity of broad "across the board" attacks on an employer's discriminatory policies. *See Payne v. Travenol Laboratories,* 565 F.2d 895 (5th Cir. 1978). While the individual complaints of exempt and non-exempt female employees of Frito-Lay may not be identical, they share common objectives and common legal and factual positions. (Approximately 92% of the management staff in 1977 in the North Texas area at Frito-Lay was male.) The "animus"/"nexus" in this case is the Hackemann Battery which is used in the employment and promotional decisions affecting exempt personnel, and the subjective hiring and promotional system for exempt and non-exempt personnel utilized by Frito-Lay. As stated by Mr. King, the hiring and promotional decisions as to exempt or non-exempt personnel, union or non-union, are ul-

timately and principally a management decision, subject only to seniority provisions in the union contract. It is this commonality of objective and contention that makes it appropriate for Ms. Ligon to represent a class composed of exempt and non-exempt employees and applicants at Frito-Lay. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.) *cert. den'd.*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Davis v. Weir*, 497 F.2d 139 (5th Cir. 1974); *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973).

A number of courts have permitted class certification across exempt/non-exempt lines. *McClendon v. M. David Lowe Personnel Services, Inc.*, 15 F.E.P. Cases 245, 247 (S.D.Tex.1977); *Womens Committee v. National Broadcasting Co., Inc.*, 71 F.R.D. 666 (S.D.N.Y.1976); *Kyriazi v. Western Electric Co.*, 13 F.E.P. Cases 1342 (D.N.J. 1975); *Holiday v. Red Ball Motor Freight*, 15 F.E.P. Cases 59 (S.D.Tex.1977); *Harriss v. Pan American World Airways*, 74 F.R.D. 24 (N.D.Calif.1977). The Fifth Circuit has permitted an applicant to represent applicants and employees in a Title VII action against an employer. *Carr v. Conoco Plastics, Inc.*, 423 F.2d 57 (5th Cir. 1970), *cert. den'd.*, 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970).

As Judge Higginbotham recently wrote: "A class representative and a class member must be similarly, not identically, situated. It is only common sense that an effort to group into a class persons with interest, to the claimed illicit conduct is not aided by extraneous requirements for class membership . . . *Rodriguez* does not mean that a class representative must suffer the same injury as his class members. Such a strict reading would frustrate the goals of Title VII." *Vuyanich v. Republic National Bank of Dallas*, 78 F.R.D. 352 (N.D.Tex.1978).

## RULE 23

### 1. *Common Questions of Law or Fact/Typicality*

I have already discussed and rejected defendant's contention that plaintiff's proposed class lacks common questions of law, common questions of fact, or typicality because Ms. Ligon allegedly cannot represent Frito-Lay employees or non-exempt applicants or employees. Frito-Lay also contends that it runs a highly decentralized corporation in which personnel decisions are the responsibility of the line organization directly affected, rather than controlled by a centralized bureaucracy located at its corporate headquarters, and that therefore there are no common issues of fact or law. In fact, however, Mr. King testified that the plant managers did receive instructions and guidelines promulgated by the company at the national headquarters level. These are broad policies, but the ultimate responsibility for compliance with EEOC guidelines in recruiting and hiring rests with Frito-Lay headquarters and not with the decentralized plant managers. The plant managers are not hiring independent of the company's EEOC policies and procedures, although it is true that the national office does not make every ultimate hiring or promotional decision. In addition, there are guidelines for the managers' use of the standardized tests in their hiring and promotion decisions. Thus, the evidence at this point establishes that the line organizations are not as independent as the defendant claims.

### 2. *Adequacy of Representation*

Defendant asserts that Ms. Ligon's lack of experience working under practices allegedly affecting employees and a lack of knowledge concerning such practices, as well as her interests which are antagonistic to those of the class, preclude her from being an adequate representative of employees.

While Ms. Ligon may not currently possess personal knowledge of defendant's employment practices, she has demonstrated to this court through her attorney that she will, through discovery, be able to ascertain those conditions and adequately represent the interests of the class. The broad class relief which the Fifth Circuit has repeatedly permitted would be impossible to obtain

if every class representative had to be familiar with each and every aspect of defendant's business in order to be an adequate representative.

■ The defendant suggests that there may be a possibility that those rejected for employment at Frito-Lay may have interests different from those persons who were actually employed. No evidence has been presented to this court that an actual conflict of interest exists. The court will continually monitor the status of the case, and should it become necessary to independently protect the interest of Frito-Lay employees, the court may consider appointing independent counsel to represent them. As the Court stated in *Grigsby v. Northern Mississippi Medical Center, Inc.,* 586 F.2d 457, 462 (5th Cir. 1978), the Court "must continue to carefully scrutinize the adequacy of representation and withdraw certification if such representation is not furnished." The court does not believe on the current record, however, that the potential for conflict between Frito-Lay applicants and employees is so great that Ms. Ligon would be an inadequate representative of Frito-Lay employees.

3. *Numerosity*

■ Plaintiff and defendant have agreed that the class, if any, certified by this court, should be geographically limited to Frito-Lay facilities in the Dallas/Fort Worth S.M.S.A. In 1977 918 females were employed by Frito-Lay within this geographic area, and between January 1st, 1972 and September, 1977, there were at least 252 applicants for exempt positions with the defendant who took the Hackemann Battery test. Plaintiff need not show the exact number of class members, *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3rd Cir.), *cert. den'd.,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), and certainly where plaintiff has demonstrated the existence of at least 1,000 persons who may be proper members of the class, the requirement of numerosity is satisfied. *Cypress v. Newport News and Non Sectarian Hospital Association,* 375 F.2d 648 (4th Cir. 1975) (18

sufficient number); *Tims v. Board of Education of McNeil, Arkansas,* 452 F.2d 551 (8th Cir. 1971).

Defendant seeks to limit the potential number of class members by arguing that the class should properly be restricted to those persons who could have filed timely charges with the EEOC at the time Ms. Ligon filed her charge. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3rd Cir.) *cert. den'd.,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

■ *Wetzel* also held, however, that "the maintenance of discriminatory hiring and promotion policies . . . are continuing violations of Title VII and would allow a filing of a charge at any time . . .". Id. at 246. Thus, if defendant's allegedly discriminatory practices are in the nature of continuing violations only employees who left the employ of the defendant so long ago that their time to file has run out would be barred from the class. *Id.*

■ A refusal to rectify a discriminatory practice or a repetition of the practice itself can render the act a continuing violation of civil rights. *Marlowe v. Fisher Body,* 489 F.2d 1057 (6th Cir. 1973); *Cox v. U. S. Gypsum Co.,* 409 F.2d 289 (7th Cir. 1969). It may also be a continuing violation if defendant's actions demonstrate an ongoing pattern and practice of discrimination. *Kohn v. Royall, Koegel and Wells,* 59 F.R.D. 515 (S.D.N.Y.1973).

It would be improper at this stage of the proceedings to prejudge the merits of whether or not plaintiff has sufficiently established a continuing violation of Title VII but no motion for summary judgment on this point has been presented to the court. Certainly, the statistical evidence presented by the plaintiff suggests that Frito-Lay, for one reason or another, has not hired a substantial number of women during the period 1973 to 1978. Since courts have traditionally relaxed the 180 day time limit when the named plaintiff has suffered a continuing violation, it is only logical that they should also relax the requirement for a class member when there is an initial show-

ing of a continuing violation. Thus, I reject defendant's attempt to limit the class to those persons who could file EEOC complaints during the 180 day period between January 23rd, 1973 and July 23, 1973. A class may be properly certified from January 25, 1973 to the present.

### 4. *Rule 23(b)(2)*

Rule 23(b)(2) provides that a class is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class", and the class representative is seeking "final injunctive relief or corresponding declaratory relief." Rule 23(b)(2) Fed.R.Civ.Pro. Employment discrimination cases are peculiarly suited to class treatment. *Jenkins v. United Gas Corporation,* 400 F.2d 28 (5th Cir. 1968). Rule 23(b)(2) has an independent requirement of commonality, permitting a class action when a defendant refuses to act on grounds generally applicable to the class. *Johnson v. American Credit Co. of Georgia,* 581 F.2d 526 (5th Cir. 1978). A plaintiff in a Rule 23(b)(2) action may also, as requested in Ms. Ligon's complaint, seek back pay to compensate for the allegedly discriminatory treatment if the request for damages is ancillary to the request for injunctive relief and if the court provides for a separate determination of who is entitled to recover damages and in what amount. *Robinson v. Lorillard Corp.,* 444 F.2d 791 (4th Cir. 1971); *Lukenas v. Bryce's Mountain Resort, Inc.,* 538 F.2d 594 (4th Cir. 1976); *Society for Individual Rights, Inc. v. Hampton,* 528 F.2d 905 (9th Cir. 1975).

Plaintiff has alleged and provided some evidence at the class action hearing that Frito-Lay has discriminated against female Frito-Lay employees and applicants as a whole by the use of the Hackemann Battery and by the use of a predominately subjective system of hiring and promotion. These two practices affect all or nearly all of the members of plaintiff's proposed class. It is therefore appropriate at this stage of the proceedings to certify this suit as a Rule 23(b)(2) class action for injunctive relief.

Plaintiff also requests that the class be permitted to seek recovery of damages. The only damage issues which are ancillary to the claims for injunctive relief in this case, and thus appropriate for the Court to consider in awarding class relief under Rule 23(b)(2) are those two specific practices which allegedly affect the entire class, the Hackemann Battery and the male-dominated subjective hiring and promotional review system. On these two limited areas I think it is appropriate for the class to also seek damages, even though this is a Rule 23(b)(2) class.

I am not restricting future discovery to these two issues, however, because plaintiff's discovery up to this point has been primarily directed at determining the size and scope of the proposed class. Plaintiff may uncover other practices during the course of discovery which may also affect the entire class, and should that occur, I will permit the plaintiff to include those practices in her complaint and expand the scope of plaintiff's request for injunctive relief and damages, providing the request is timely filed. This is consistent with my duty to oversee the class, and expand or contract its size, scope, or the issues presented to the Court when appropriate so that the rights of the class are properly protected.

After considering all of the evidence in this case, this cause is certified as a class action under Rule 23(b)(2) for injunctive and damage relief resulting from the use of a male dominated subjective review system and the Hackemann Battery test, with a single class including all past, present, and future female applicants for exempt and non-exempt positions at Frito-Lay in the Dallas/Fort Worth S.M.S.A., and all past, present, and future exempt and non-exempt employees at Frito-Lay in the Dallas/Fort Worth S.M.S.A., from January 25, 1973 to the present, one hundred eighty (180) days prior to plaintiff's filing with the EEOC. Further, it is submitted that Ms. Ligon should be certified as the class representative and law offices of James C. Barber as attorneys for the class.

It is so ORDERED.