Jacquelyn GREENE, Individually and on behalf of others similarly situated, Plaintiff,

v.

The SOUTHLAND CORPORATION, Defendant.

Civ. A. No. 77–1303–D.

United States District Court, N. D. Texas, Dallas Division.

June 28, 1979.

118

Larry D. Morris, Dallas, Tex., for plaintiff.

Lyman G. Hughes, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Came on for consideration before the court, the Honorable Robert M. Hill, United States District Judge, plaintiff's Motion to Certify the Class or Alternatively for Conditional Certification. Having considered the motion and attorneys' briefs, the discovery on file, and the evidence presented at a hearing on the motion on April 10, 1978, the court is of the opinion that a class should not be certified at this time.

The following discussion sets forth the reasoning of the court's decision and provides guidelines for the presentation of a class action cognizable by the court.

### Facts

Plaintiff Jacquelyn Greene (Greene) brings this action against defendant The Southland Corporation (Southland) on her own behalf and on behalf of others similarly situated alleging that Southland discriminates against blacks and females in its employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981, 1983. Greene, a black female, contends that Southland discriminated against her in failing to promote her, in paying her, in discharging her, and in failing to rehire her. She also claims solely on her behalf that Southland violated the Rehabilitation Act of 1973, 29 U.S.C. §§ 793, 794. Finally, she asserts a pendant claim under the Texas Workmen's Compensation Act, Tex.Rev.Civ. Stat.Ann. art. 8307c. Greene seeks to represent a class consisting of all past, present and future "black and/or female" persons affected by Southland's discriminatory employment practices in its facilities throughout the United States from 1975 to the present.

Southland operates a chain of retail food stores known as Seven-Eleven stores across the nation. There are 6300 Seven-Eleven stores in 40 states, 5 Canadian provinces, and the District of Columbia, 60% of which are company owned and 39% of which are franchises. Southland also engages in a number of activities related to its retail operation. For example, it maintains three large distribution centers, operates the fourth largest dairy in the United States, and engages in the truck leasing, food processing, and chemical industries. Southland employs 34,000 persons in 41 states, 9% of whom are subject to labor contracts.

There are 200 Seven-Eleven stores in the Dallas metropolitan area, each staffed by 4–5 employees. The stores are organized by districts. A district includes 30 stores and is the smallest reporting department in Southland's Seven-Eleven organization. The job positions within a district include district manager, office manager, supervisor, night supervisor, auditor, office clerk, maintenance man, store manager, and clerk. In 1977 Southland reported to the Equal Employment Opportunity Commission (EEOC) that in District No. 1603 located in Dallas County, Texas, it employed 7 persons in the EEOC category of "Officials and managers," 113 persons in the category of "Sales workers," 8 in the "Office and clerical" category and 2 in the category of "Service workers."

At separate times from August 1975 to April 1976 Greene was employed as a clerk at two Seven-Eleven stores in District No. 1603. In December 1975, the first store at which she was employed incurred a large inventory loss. Greene took a polygraph exam at Southland's request but registered a completely flat chart because she was taking medication for epilepsy. She had not reported in her application for employment that she was an epileptic. Some time thereafter she was transferred to another Seven-Eleven store in the district. Southland asserts that Greene requested the transfer after a physical fight with three customers. Greene contends that she transferred unwillingly and that her supervisor, a white female named Connie Holcomb (Holcomb), promised her that she would become an assistant manager at the new store. Instead she remained a clerk under the supervision of Holcomb. When the new store incurred an inventory loss, Southland informed Greene that it would transfer her again. It did not offer to give her a polygraph exam. Since Southland could not find a store manager who would employ her, it terminated her. The district manager, Joe Thomas, made the decision to terminate her aided by Holcomb. Greene complained to the Department of Labor that she was terminated in violation of the Rehabilitation Act of 1973 and in August 1976 Southland invited Greene to reapply for employment. Greene was offered employment at a Seven-Eleven store but she declined because she did not like the shifts she would have to work.

Mary Lea Jackson (Jackson) also testified at the April 10, 1978, class certification hearing. She contends that she was terminated from her job as a clerk at a Seven-Eleven store in Dallas County, Texas, because she is black and because she has back troubles. She does not allege sex discrimination.

### Discussion

### I. Scope of the Class Action

In order to bring the class action she alleges, Greene must adduce facts sufficient to meet the standards set forth in F.R.Civ.P. 23. *Cooper v. Allen*, 467 F.2d 836, 839 (5th Cir. 1972). To carry her burden, she relies largely upon the Fifth Circuit's recognition that suits alleging employment discrimination are by their nature class actions. *Jenkins v. United Gas Corp.*, 400 F.2d 28 (5th Cir. 1968). The allegation of employment discrimination alone, however, does not sanction an attack upon an employer's employment practices unlimited as to time, geographic scope, facility and job category. *See Cooper, supra; Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 479–80 (N.D.Cal.1978). Since Greene has alleged a nationwide class encompassing all Southland employees at all facilities, she

must demonstrate that common issues of fact and law permeate the alleged class, F.R.Civ.P. 23(a)(2), and, to the same effect, that the employment practices alleged to be discriminatory touch all members of the proposed class. 23(b)(2); *See Wofford, supra*, 78 F.R.D. at 480. The issue is not determining the kinds of employment practices appropriate for class treatment. The Fifth Circuit's policy of favoring "across the board" Title VII class actions is not questioned. *See Satterwhite v. City of Greenville*, 578 F.2d 987, 999 n. 78 (5th Cir. 1978). This issue is the scope of those employment practices in relation to the class alleged. *See Webb v. Westinghouse Electric Corp.*, 78 F.R.D. 645, 649–50 (5th Cir. 1978). It is necessary to determine preliminarily the proper scope of a class action because the other standards that must be met to establish a class action—numerosity, typicality, and adequacy of representation—depend on the scope of the class action.

■ Where a Title VII plaintiff challenges a specific employment policy, the proper class is easily identified: those employees to whom the policy applies. *See Webb, supra*, 78 F.R.D. at 650. For example, the proper class for which a challenge to a company-wide maternity leave policy may be waged would be all female employees of the company. Where a Title VII plaintiff alleges a generalized pattern of discrimination, it is more difficult to ascertain the employees affected and, hence, the boundaries of the class. The plaintiff seeking class representation must show that the general pattern of discrimination affecting the alleged class emerges from common, centralized employment practices. *See, Hill v. American Airlines, Inc.*, 479 F.2d 1057 (5th Cir. 1973); *Webb, supra*, 78 F.R.D. at 650; *Wofford, supra*, 78 F.R.D. at 480–86. A facility, geographic division, department, or other organizational unit of a corporation which makes employment decisions autonomously can only define a class apart from other employees of the corporation. *Wofford, supra*, 78 F.R.D. at 481. Other factors, such as geographic dispersion, diversity of employment conditions, work activities or individual class members'

characteristics, and the diffusion of claims over time, bear on the existence of a common pattern of employment discrimination throughout a company. *Id.* at 480.

■ Greene's motion for class certification presents numerous problems in defining the proper scope of a class. Greene brings this suit on behalf of blacks and females. The court must determine, therefore, whether the race and sex discrimination alleged by Greene emanate from common employment policies. One federal district court concluded that claims of race and sex discrimination do not present common questions of fact and law. *Godbolt v. Hughes Tool Co.*, 63 F.R.D. 370, 373 (S.D. Tex.1972). Most courts, however, have recognized classes composed of blacks and females in employment discrimination suits without inquiring into the problem of commonality. *E. g., Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977); *Parker v. Bell Helicopter Co.*, 78 F.R.D. 507 (N.D.Tex. 1978). It appears that once a Title VII plaintiff has made some showing of race and sex discrimination it is presumed for purposes of certification that both forms of discrimination are manifestations of the same generalized policy, e. g., a policy favoring white males in employment. *See Vuyanich v. Republic National Bank of Dallas*, 78 F.R.D. 352, 356 (N.D.Tex.1978). If during later proceedings distinct policies of race or sex discrimination are isolated, subclasses can be created. *Id.*

Greene has presented statistical evidence which demonstrates, at least for purposes of class certification, a pattern of discrimination against blacks and women in Southland's employment practices in District No. 1603. In 1977, 5% of Southland's employees in that district were black although approximately 16% of the population of the Dallas Standard Metropolitan Statistical Area (SMSA) is black. Also in 1977, 38% of Southland's employees were female although approximately 52% of the population of the Dallas SMSA is female. In the same year no blacks were employed in the EEOC category of "Officials and mana-

gers," and 29% of the persons employed in that category were female. There is sufficient evidence of a common core of race and sex discrimination in Southland's employment practices to justify certification of a class of blacks and females in this case.

■ Factual and legal differences between the class claims of blacks and females have already appeared, however. Greene's interrogatories inquired into Southland's maternity leave policy. If she asserts that Southland's maternity leave policy is discriminatory, the class of employees affected will likely be nationwide. If so, the geographic scope of females in the class could exceed that of blacks. Furthermore, only blacks may assert a claim founded upon 42 U.S.C. § 1981. *See Alpha Portland Cement Co. v. Reese*, 507 F.2d 607 (5th Cir. 1975). Because of these disparities and because of the conflict of interest between blacks and females discussed *infra* the court is of the opinion that blacks and females should be divided into subclasses. *See Wofford, supra*, 78 F.R.D. at 483.

■ Greene's appetite for class representation is insatiable in her desire to represent employees of Southland of differing job status and location. Her effort to represent a class encompassing all Southland employees across the nation falters, however, on the lack of discovery accomplished. Southland has refused to comply with Greene's discovery requests for any area other than District No. 1603. The evidence concerning the degree of centralized control that Southland exerts over its employment practices is incomplete. Southland has promulgated uniform policies concerning transfers and salary increases afforded Seven-Eleven store employees. Apparently, Southland does not have uniform termination and promotion policies. The district supervisor decides whether to fire an employee and his or her decision may be reviewed by the district manager and higher level authorities. Promotions are based on an employee's qualifications to perform a particular job and the performance in the currently held job. There is no evidence of: (1) the degree of centralized control exerted over Southland's employment practices in Seven-Eleven stores across the nation; (2) the extent to which Southland's employment practices extend beyond its Seven-Eleven store operation to its other facilities; and (3) the extent to which employment practices affecting persons in Greene's job category also affect persons in upper level job categories. Accordingly, the court shall defer its decision whether to certify a class in this case until Greene has had the opportunity to discover evidence relevant to the existence of specific policies of discrimination implemented by Southland or of generalized policies of discrimination under centralized control within Southland.

## II. *Adequacy of Representation*

Although the court cannot finally decide whether Greene has met the other requirements for a class action—numerosity, typicality and adequacy of representation—until it has determined the scope of the class, it will discuss for purposes of guidance a serious question it has concerning Greene's adequacy as a representative of both blacks and females. The Fifth Circuit has established two criteria for determining adequacy of representation:

> "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel."

*Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973). In connection with the second criterion, the *Gonzales* court cited *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968) which stated, "[I]t is necessary to eliminate so far as possible the likelihood . . . that plaintiff has interests antagonistic to those of the remainder of the class." *Id.* at 72 n. 10. *See Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969) (adopting the language of *Eisen* quoted above). Such a conflict will arise when a plaintiff seeks to represent a class whose members have conflicting interests. *See Gill v. Monroe County Dept. of Social Services*, 79 F.R.D. 316, 327–28 (W.D.N.Y.1978).

Greene's representation of a class of blacks and females would appear to expose her to serious conflicts of interest. She claims, on one hand, that Southland discriminates against black males and, on the other hand, that it discriminates against white females. She could explain that Southland discriminates on the basis of race and sex but when compelled to choose between blacks and females in employment decisions it prefers one classification or the other. Should evidence be presented, however, that Southland prefers, for instance, white females to black females and black males, Greene's suit on behalf of females would be damaged. Greene could find herself in a position where she is debating whether to present at trial flagrant evidence of discrimination against blacks because white females benefited from the discrimination. Similarly, evidence that white females discriminated against blacks would weaken Greene's case for sex discrimination. Unable to vigorously prosecute the interests of all blacks and females, Greene's qualifications as an adequate representative would fall far short. Even if job competition between blacks and females did not affect Greene's presentation of evidence at trial, the need for mediating antagonisms between blacks and females could undermine the effectiveness of her pre-trial preparation. Finally, assuming the evidence required to prevail on the class claims of sex and race discrimination diverges, *see* discussion *supra*, Greene might contemplate diverting a disproportionate share of her resources to the class claim with the greatest chance of success.

Two federal district courts have concluded that a black female could never adequately represent a class consisting of blacks and females in an employment discrimination action because of the conflict which inheres in such representation. *Wofford, supra*, 78 F.R.D. at 490–91. *Droughn v. FMC Corp.*, 74 F.R.D. 639, 643 (E.D.Pa. 1977). The Eighth Circuit, on the other hand, recognized *sub silentio* that a black female could adequately represent a class of blacks and females in an employment discrimination suit. *See Donaldson v. Pills-*

*bury Co.*, 554 F.2d 825, 831–32 (8th Cir. 1977). A court in this district recently refused to hold "as a matter of law" that a black female could not adequately represent blacks and females, but conditioned a finding of inadequacy upon a showing that an actual or potential conflict of fundamental proportion existed between blacks and females in the class. *Vuyanich v. Republic National Bank of Dallas*, 82 F.R.D. 420, Civil Action No. CA–3–6982–C (April 25, 1979).

The court is of the opinion that potential conflict between blacks and females in a class will render a black female an inadequate representative of the class. Potential conflict exists if the challenged employment practices are likely to involve competition between blacks and females or there is other evidence of possible antagonism between blacks and females with regard to employment practices. A thorough investigation of potential class conflict would inappropriately take the court deep into the merits of the case at the class certification stage. Should a court certify a black female as an adequate representative of blacks and females and an actual conflict develop at trial between blacks and females, the court would be required to decertify the class. Because such waste of judicial resources can be simply avoided by dividing blacks and females into subclasses and requiring separate representatives of each subclass, a court should not delve deeply into the potentiality of conflict before determining that a black female who seeks to represent a class of blacks and females is an inadequate representative of both classifications.

Turning to the facts of this case, the court finds that Southland employed 6 blacks and 44 females in District No. 1603 as of March 26, 1977. Two white females held positions in the EEOC category of "Officials and managers." No blacks held positions in that category. Four black males and 2 black females were in the EEOC category of "Sales workers." Sixteen white females were in that category. The supervisor who participated in Greene's termination was a white female. This evi-

dence shows that blacks and females likely compete for promotions or other employment benefits and that antagonism could exist between them. Therefore, Greene is not an adequate representative of the blacks and females even if the scope of the class is limited to District No. 1603. Greene may represent either blacks or females, but not both. Within 30 days of the file date of this Order, Greene shall designate which subclass she wishes to represent.[1] An interested party will then be given the opportunity to intervene in order to represent the undesignated subclass. An intervenor should come forward within a reasonable time to permit the orderly progress of this suit. Subject to the order and guidelines set forth above, plaintiff's motion for class certification is denied.

It is so ORDERED.

---

1. The court is of the opinion that Greene's termination and her pursuit of claims based upon the Rehabilitation Act of 1973 and the Texas Workmen's Compensation Act do not indicate that her discrimination claims are atypical or that she will be an inadequate representative. *See Satterwhite, supra*, 578 F.2d at 999 n. 8 (5th Cir. 1978); *Long v. Sapp*, 502 F.2d 34 (5th Cir. 1974). If the scope of this class action is limited to District No. 1603, there would be an issue whether the number of blacks included in the subclass met the "numerosity" standard for bringing a class action. *See Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir. 1978). Southland's EEOC report for March 20, 1977, shows that only 6 blacks were then employed in District No. 1603. The previous year, 16 blacks were employed in that district.